JOHN J. SANSONE, County Counsel (State Bar No. 103060)
County of San Diego
By MORRIS G. HILL, Senior Deputy (State Bar No. 97621)
1600 Pacific Highway, Room 355
San Diego, California 92101-2469
Telephone: (619) 531-4877;  Fax: (619) 531-6005
E-mail: morris.hill@sdcounty.ca.gov

Attorneys for Defendant County of San Diego


# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA


| | |
|---|---|
| JIM MAXWELL and KAY MAXWELL, individually and as guardians of TREVER ALLEN BRUCE and KELTEN TANNER BRUCE; and JIM MAXWELL, as executor of the ESTATE OF KRISTIN MARIE MAXWELL-BRUCE, <br><br>                Plaintiffs, <br><br>        v. <br><br> COUNTY OF SAN DIEGO; ALPINE FIRE PROTECTION DISTRICT; VIEJAS FIRE DEPARTMENT; DEPUTY LOWELL BRYAN "SAM" BRUCE; Does 1-50, <br><br>                Defendants. | No. 07-cv-2385-JAH(WMc) <br><br> Date:  February 19, 2008 <br> Time:  2:30 p.m. <br> Dept.:  Courtroom of the Honorable John A. Houston <br> Trial Date:  None |


MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS THE FIRST, SECOND, THIRD AND
FOURTH CAUSES OF ACTION OF PLAINTIFFS' COMPLAINT
AND CERTAIN CLAIMS IN THE EIGHTH AND NINTH CAUSES OF
ACTION, AND FOR A MORE DEFINITE STATEMENT AS TO OTHER
CLAIMS IN THE EIGHTH AND NINTH CAUSES OF ACTION

# TOPICAL INDEX

**Page**

TABLE OF AUTHORITIES ......................................................................... -iii-

I     INTRODUCTION ..................................................................... 1

    A.  Facts ......................................................................... 1

    B.  Parties ....................................................................... 2

    C.  Factual Scenarios Alleged Against the County ................................. 2

    D.  Relief Sought By This Motion .............................................. 2

II    PLAINTIFFS' PERTINENT ALLEGATIONS AND CLAIMS ............. 3

    A.  About the Shooting ........................................................ 3

    B.  Employment-Related Allegations ......................................... 4

    C.  Request For Judicial Notice ............................................... 5

III   APPLICABLE STANDARDS ....................................................... 5

    A.  Dismissal on Pleadings .................................................... 5

    B.  County Liability Under Federal Law ...................................... 7

IV    ARGUMENT ........................................................................ 11

    A.  Introduction To Argument ............................................... 11

    B.  Incurable Conflict of Interest ........................................... 11

    C.  Color of Law and Scope of Employment ................................ 14

    D.  No Liability for Providing Guns ......................................... 14

**TOPICAL INDEX**
**(Cont'd.)**

<u>**Page**</u>

E.  No Section 1983 Hiring Liability -- The *Brown* Case ...................... 15

F.  No California Governmental Hiring Liability --
The *de Villers* Case ........................................................... 16

G.  No Federal Liability On Danger-Creation Theory ........................... 19

H.  No California Liability On Danger-Creation Theory ....................... 19

I.  Specific Causes Of Action ................................................ 22

V    CONCLUSION ......................................................... 25

# TABLE OF AUTHORITIES

**Page**

Adams v. City of Fremont, 68 Cal.App.4th 243 (1998) ............................ 20, 21

Am. Timber & Trading Co. v. First Nat'l Bank, 690 F.2d 781
  (9th Cir. 1982) ...................................................................................... 5

Associated Gen. Contrs. of Cal., Inc. v. Cal. State Council of Carpenters,
  459 U.S. 519 (1983) ............................................................................. 6

Balistreri v. Pacifica Police Dept., 901 F.2d 696 (9th Cir. 1988) ...................... 7

Bennett v. Yoshina, 140 F.3d 1218 (9th Cir. 1998)
  (citing Johnson v. Fankell, 520 U.S. 911 (1997)) ............................................ 9

Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397
  (1997) .......................................................................... 8, 15, 16, 23

Bordanaro v. McLeod, 871 F.2d 1151 (1st Cir. 1989) ....................................... 8

Brewster v. Shasta County, 275 F.3d 803 (9th Cir. 2001) ........................... 9, 10

Campanelli v. Bockrath, 100 F.3d 1476 (9th Cir. 1996) ................................... 7

City of St. Louis v. Praprotnik, 485 U.S. 112 (1988) ..................................... 8, 9

Clemente v. State of California, 101 Cal.App.3d 374 (1980) ......................... 20

Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236 (4th Cir. 1989) ........................ 5

Conley v. Gibson, 355 U.S. 41 (1957) .............................................................. 5

County of Los Angeles v. Superior Court (Peters), 68 Cal.App.4th 1166
  (1998) ....................................................................................................... 9

Davidson v. City of Westminster, 32 Cal.3d 197 (1982) .................... 19, 20, 22

# TABLE OF AUTHORITIES
## (Cont'd.)

<u>Page</u>

DeShaney v. Winnebago County, 489 U.S. 189 (1989) ................................... 11

de Villers v. County of San Diego, 156 Cal.App.4th 238
  (2007) ...................................................................... 16, 17, 18, 19, 24

Eastburn v. Regional Fire Protection Authority, 31 Cal.4th 1175
  (2003) ................................................................................. 17, 18

Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1937) .............................. 10

Estate of Johnson v. Village of Libertyville, 819 F.3d 174 (7th Cir. 1987) ..... 22

Fairley v. Luman, 281 F.3d 913 (9th Cir. 2002) (per curiam) ........... 8

Fontana v. Haskin, 262 F.3d 871 (9th Cir. 2001) ............................... 5

Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002) ................ 6

Gompper v. VISX, Inc., 298 F.3d 893 (9th Cir. 2002) ...................... 7

Gregory v. Gregory, 92 Cal.App.2d 343 (1949) .............................. 13

Hart v. Massanari, 266 F.3d 1155 (9th Cir. 2001) ........................... 10

Ishmael v. Millington, 241 Cal.App.2d 520 (1966) ......................... 13

Jackson v. Clements, 146 Cal.App.3d 983 (1983) ........................... 21

Jacoves v. United Merchandising Corp., 9 Cal.App.4th 88 (1992) ...... 14, 15, 23

Klemm v. Superior Court (County of Fresno), 75 Cal.App.3d 893 (1977) ...... 12

Koch v. Koch Indus., Inc., 203 F.3d 1202 (10th Cir. 2000),
  cert. denied, 531 U.S. 926 (2000) ................................................. 10

iv

# TABLE OF AUTHORITIES
## (Cont'd.)

**Page**

Lee v. City of Los Angeles, 250 F.3d 668 (9th Cir. 2001) ................................. 7

Lopez v. City of San Diego, 190 Cal.App.3d 678 (1987) ................................ 21

Lopez v. Smith, 203 F.3d 1122 (9th Cir. 2000) (en banc)
  (quoting Doe v. United States, 58 F.3d 494 (9th Cir. 1995)) .......................... 7

Mann v.  State of California, 70 Cal.App.3d 773 (1977) ........................... 21, 22

M.B. v. City of San Diego, 233 Cal.App.3d 699 (1991) ........................... 20, 21

McMillian v. Monroe County, 520 U.S. 781 (1997) ................................ 8, 9, 10

Menotti v. City of Seattle, 409 F.3d 1113 (9th Cir. 2005) ................................ 8

MGIC Indem. Corp. v. Weisman, 803 F.2d 500 (9th Cir. 1986) ...................... 7

Minch v. California Highway Patrol, 140 Cal.App.4th 895 (2006) ........... 21, 22

Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658
  (1978) .................................................................... 7, 9, 10, 15, 23

Morgan v. United States, 323 F.3d 776 (9th Cir. 2003) .................................... 6

Munoz v. City of Union City, 120 Cal.App.4th 1077 (2004) .......................... 18

Nadell v. Las Vegas Metro. Police Dept., 268 F.3d 924 (9th Cir. 2001) ........... 8

Navarro v. Block, 250 F.3d 729 (9th Cir. 2001) ................................................ 7

Neitzke v. Williams, 490 U.S. 319 (1989) .......................................................... 6

Newman v. Sathyavaglswaran, 287 F.3d 786 (9th Cir. 2002) ........................... 6

Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480 (9th Cir. 1995) ............... 6

# TABLE OF AUTHORITIES
## (Cont'd.)

**Page**

Peloza v. Capistrano Unified Sch. Dist., 37 F.3d 517 (9th Cir. 1994) ............... 6

Pembaur v. City of Cincinnati, 475 U.S. 469 (1986) (plurality opinion) ........... 8

Pitts v. County of Kern, 17 Cal.4th 340 (1998) ........................................ 8, 9, 10

Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530 (9th Cir. 1984) ........... 7

Sagana v. Tenorio, 384 F.3d 731 (9th Cir. 2004) ................................................ 5

Searcy v. Hemet Unified School Dist., 177 Cal.App.3d 792 (1986) ............... 18

Shelton v. City of Westminster, 138 Cal.App.3d 610 (1982) ........................... 21

Smith v. City of Fontana, 818 F.3d 1411 (9th Cir.),
    cert. denied, 484 U.S. 935 (1987) .................................................................. 22

Smith v. Jackson, 84 F.3d 1213 (9th Cir. 1996) ................................................. 6

Sprewell v. Golden State Warriors, 266 F.3d 979 (9th Cir. 2001) .................... 6

Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) ......................................... 6

Tsakos Shipping and Trading, S.A. v. Juniper Garden Town Homes, Ltd.,
    12 Cal.App.4th 74 (1993) ....................................................................... 13, 14

Ulrich v. City and County of San Francisco, 308 F.3d 968
    (9th Cir. 2002) .......................................................................................... 7, 8

Van Ort v. Estate of Stanewich, 92 F.3d 831 (9th cir. 1996) ........................... 14

Venegas v. County of Los Angeles, 32 Cal.4th 820 (2004) .............. 8, 9, 10, 23

Von Batsch v. American Dist. Telegraph Co., 175 Cal.App.3d 1111
    (1985) ............................................................................................................ 21

# TABLE OF AUTHORITIES
## (Cont'd.)

**Page**

W. Mining Council v. Watt, 643 F.2d 618 (9th Cir. 1981) ................................ 6

Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136 (9th Cir. 2003) ........... 6

Weiner v. San Diego County, 210 F.3d 1025 (9th Cir. 2000) ........................... 9

Williams v. State of California, 34 Cal.3d 18 (1983) ................................ 20, 22

Wood v. Ostrander, 879 F.2d 853 (9th Cir. 1989) ........................................... 19

Woodfield v. Bowman, 193 F.3d 354 (5th Cir. 1999) ..................................... 10

Zelig v. County of Los Angeles, 27 Cal.4th 1112 (2002) ............................... 18

## STATUTES

Civil Code
  Section 1714 ................................................................................... 18

Federal Rules of Civil Procedure
  Rule 8(a) ........................................................................................... 5
  Rule 8(e)(1) ....................................................................................... 5
  Rule 8(f) ............................................................................................ 5
  Rule 12(b)(6) .................................................................................. 6, 7

Government Code
  Section 820.25 ................................................................................ 22

Penal Code
  Section 192(a) ................................................................................... 5
  Section 12022.5(a) ............................................................................ 5

28 United States Code
  Section 1652 .................................................................................... 10

# TABLE OF AUTHORITIES
## (Cont'd.)

**Page**

42 United States Code
  Section 1983 ....................................................... 9, 10, 15, 16, 19, 22

## OTHER

Ninth Circuit Model Civil Jury Instructions No. 9.2, 9.4 ................................. 14

1  JOHN J. SANSONE, County Counsel (State Bar No. 103060)
   County of San Diego
2  By MORRIS G. HILL, Senior Deputy (State Bar No. 97621)
   1600 Pacific Highway, Room 355
3  San Diego, California 92101-2469
   Telephone: (619) 531-4877;  Fax: (619) 531-6005
4  E-mail: morris.hill@sdcounty.ca.gov

5  Attorneys for Defendant County of San Diego

6

7

8              IN THE UNITED STATES DISTRICT COURT

9          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11  JIM MAXWELL and KAY MAXWELL,  )   No. 07-cv-2385-JAH(WMc)
    individually and as guardians of TREVER )
12  ALLEN BRUCE and KELTEN TANNER )   MEMORANDUM OF POINTS AND
    BRUCE; and JIM MAXWELL, as      )   AUTHORITIES IN SUPPORT OF
13  executor of the ESTATE OF KRISTIN )   MOTION TO DISMISS THE FIRST,
    MARIE MAXWELL-BRUCE,           )   SECOND, THIRD AND FOURTH
14                                  )   CAUSES OF ACTION OF PLAINTIFFS'
               Plaintiffs,           )   COMPLAINT AND CERTAIN CLAIMS
15                                  )   IN THE EIGHTH AND NINTH CAUSES
          v.                        )   OF ACTION, AND FOR A MORE
16                                  )   DEFINITE STATEMENT AS TO OTHER
    COUNTY OF SAN DIEGO; ALPINE    )   CLAIMS IN THE EIGHTH AND NINTH
17  FIRE PROTECTION DISTRICT;       )   CAUSES OF ACTION
    VIEJAS FIRE DEPARTMENT; DEPUTY )
18  LOWELL BRYAN "SAM" BRUCE;      )   Date:  February 19, 2008
    Does 1-50,                      )   Time:  2:30 p.m.
19                                  )   Dept.:  Courtroom of the
               Defendants.          )   Honorable John A. Houston
20  _____ )   Trial Date:  None

21                          I

22                    INTRODUCTION

23     A.    Facts.

24         Lowell Bryan "Sam" Bruce ("Mr. Bruce") was a Sheriff's deputy employed by the

25  moving defendant, the County of San Diego.  One night he fatally shot his wife Kristin

26  Marie Maxwell-Bruce ("wife") at home.  Mr. Bruce, his wife and their two young sons,

27  Trever Allen Bruce and Kelten Tanner Bruce ("the children") shared the house with the

28  wife's parents, plaintiffs Jim and Kay Maxwell ("the in-laws"), who owned it.

B    Parties.

The in-laws (Jim and Kay Maxwell) are plaintiffs in their own right, as well as personal representatives of the plaintiff children.  Plaintiff in-law Jim Maxwell also sues as executor of the wife's estate.

The County of San Diego is the moving defendant.

The Alpine Fire Protection District, Viejas Fire Department, and Mr. Bruce are also defendants.  The County is not providing their defenses.

C.    Factual Scenarios Alleged Against the County.

The complaint contains nine causes of action.  There are actually three factual scenarios under which the County could theoretically be liable:

(1)    The County caused the wife's suffering and death because it hired Mr. Bruce as a deputy sheriff after he failed psychological evaluations, also providing him with the fatal gun.

(2)    Unnamed County employees caused the wife's suffering and death by locking down the scene after the shooting and delaying medical treatment.

(3)    Unnamed County employees caused damages to the in-laws and children by various acts of misconduct after the shooting.

D.    Relief Sought By This Motion.

The County seeks dismissal of all claims blaming the County for the wife's suffering and death.  Those claims are in the First, Second, Third and Fourth Causes of Action, and involve the first two factual scenarios described above.

The County does not, at this time, seek dismissal of claims that County employees used excessive force on in-law Jim Maxwell after the shooting.  Those claims are in the Sixth and Seventh Causes of Action, and involve the third factual scenario described above.

The Eighth and Ninth Causes of Action are for infliction of emotional distress, and lump together claims based on all three factual scenarios.  The Court is asked to sever and dismiss emotional distress claims based on the first two factual scenarios, the wife's

- 2 -

suffering and death.  As to the third factual scenario, the Court is asked to order plaintiffs to plead a more definite statement, except to the extent emotional distress is based on allegations of excessive force against Mr. Maxwell.

II

PLAINTIFFS' PERTINENT ALLEGATIONS AND CLAIMS

A.    <u>About the Shooting</u>.

On the evening of December 14, 2006, Mr. "Bruce left Las Colinas [a County jail where Mr. Bruce worked] and took his County-issued weapon home.  Later that same evening," he shot his wife in front of their son in the home owned by the Maxwells. [¶ 1.][1]  "His County-issued bullet hit Kristin in the jaw, severely injuring her."  [¶ 31.] Kristin dialed "911," and plaintiff Jim Maxwell "confronted Bruce about the seriousness of the injury to which Bruce responded in substance that the injury was not a life-threatening injury."  [¶ 33.]  Instead of calling "911," Bruce "called a supervisor at the Sheriff's Department and confessed to his employer that he had just shot his wife." [¶ 34.]

When emergency responders from two fire agencies arrived, "Kristin was still alive" but "Sheriff's Deputies locked down the scene of the shooting and refused to let Kristin be taken to the hospital.  As a result, Kristin died at the scene, nearly an hour after she called for help."  [¶¶ 35-36.]  "During the last hour of Kristin's life, Defendants refused to let her parents see her, refused to let them speak to her or comfort her, and refused to let Jim and Kay Maxwell see, speak to or comfort each other."  [¶ 37.]

The San Diego Sheriff's Department responded to the "911" report of the shooting, but the scene "quickly became a scene of chaos and disorder" when deputies "learned one of their own was the shooter."  Deputies "locked down the scene and refused to let Kristin be taken to the hospital," allowing her "to drown in her own blood" nearly an hour later.  [¶ 3.]

---

[1]  Bracketed numbers correspond to the paragraph numbers in plaintiffs' complaint.

- 3 -

Mr. Maxwell "attempted to walk down the driveway to see his wife," but a deputy "pepper-sprayed him in the face and then clubbed him in order to keep him from his wife in this critical time." His wife learned of her daughter's death "only after the news media already knew." [¶ 4.] "Defendants' incompetence or arrogance even caused the news media to believe Jim was a 'suspect' . . . ." "The Maxwells were unlawfully detained and falsely imprisoned" and "Kristin's young boys were also mistreated by defendants." [¶ 37.]

"Last but certainly not least, Bruce himself acted with a willful and conscious disregard of the rights and safety" of the plaintiffs. [¶ 39.]

B.    <u>Employment-Related Allegations</u>.

Allegedly all defendants acted as agents and employees of all defendants in the scope of employment, with permission and consent, and under color of law. [¶¶ 12-13.]

"The County hired Bruce as a Deputy Sheriff after Bruce twice failed the County's psychological evaluation in order to fill a vacancy at Las Colinas." The County had experienced difficulties filling such vacancies. "The County clearly understood and appreciated that he was unfit for duty and prone to violence, but hired him anyway." The County "recklessly" hired him, provided him with a handgun, and allowed him to take it home. [¶ 2.]

In 1993, Mr. Bruce applied to the County for a corrections deputy job and the County did a background investigation, but he failed two psychological evaluations. [¶¶ 17-18.] The County's psychological evaluations "revealed a history of physical violence" and "indicated to the County that Bruce would tend to resort to violence as a way of resolving interpersonal differences with others." [¶ 19.] After Mr. Bruce failed the County's initial psychological evaluation, he applied for positions at eight other police agencies and was rejected at least once by each such agency, and despite such

///

///

///

- 4 -

1  "knowledge" and his "lack of psychological fitness" the County hired him and provided

2  him "with a deadly weapon which he ultimately used to shoot his wife."  [¶¶ 20-30.]

3        C.    Request For Judicial Notice.

4        The complaint does not allege whether the shooting was a criminal act, or merely

5  an accident.  Judicial notice is requested of Mr. Bruce's August 14, 2007 plea of guilty to

6  the felony of voluntary manslaughter, California Penal Code section 192(a), enhanced by

7  the use of a firearm, section 12022.5(a).  The plea document offers the following

8  statement from Mr. Bruce under penalty of perjury: "I shot and killed my wife which

9  resulted in her death.  My actions were not premeditated or deliberate.  I acted out of

10  passion and without malice."  The plea of guilty is lodged herewith as Exhibit "A."

11  Judicial notice is requested.  *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th

12  Cir. 1989) [guilty plea was "not subject to reasonable dispute"].

III

APPLICABLE STANDARDS

15        A.    Dismissal on Pleadings.

16        Federal Rules of Civil Procedure, rule 8(a) sets the pleading standard for claims for

17  relief.  "Under the liberal rules of pleading, a plaintiff need only provide a 'short and

18  plain statement of the claim showing that the pleader is entitled to relief.'"  *Sagana v.*

19  *Tenorio*, 384 F.3d 731, 736 (9th Cir. 2004) (quoting Fed.R.Civ.P., 8(a)).  This rule does

20  "not require a claimant to set out in detail the facts upon which he bases his claim."

21  *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  The pleadings need only give the opposing

22  party fair notice of a claim and the claim's basis.  *Conley*, 355 U.S. at 47; *Sagana*, 384

23  F.3d at 736; *Fontana v. Haskin*, 262 F.3d 871, 877 (9th Cir. 2001).  The pleadings are

24  also to "be construed as to do substantial justice," and "no technical forms of pleading . . .

25  are required."  Fed.R.Civ.P., 8(e)(1), 8(f); *Sagana*, 384 F.3d at 736; *Fontana*, 262 F.3d at

26  877.  "Specific legal theories need not be pleaded so long as sufficient factual averments

27  show that the claimant may be entitled to some relief."  *Fontana*, 262 F.3d at 877; *Am.*

28  *Timber & Trading Co. v. First Nat'l Bank*, 690 F.2d 781, 786 (9th Cir. 1982).  Also, there

- 5 -

1    is no longer a heightened pleading standard for constitutional torts in which improper

2    motive is a part of the claim.  See *Morgan v. United States*, 323 F.3d 776, 780 (9th Cir.

3    2003); *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002).

4          Under Federal Rules of Civil Procedure, rule 12(b)(6), a claim may be dismissed

5    because of the plaintiff's "failure to state a claim upon which relief can be granted."

6    Fed.R.Civ.P., 12(b)(6).  This rule provides for dismissal of a claim if, as a matter of law,

7    "it is clear that no relief could be granted under any set of facts that could be proved

8    consistent with the allegations."  *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Parks*

9    *Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Thus, the

10   determinative question is whether there is any set of "facts that could be proved

11   consistent with the allegations of the complaint" that would entitle plaintiff to some

12   relief.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).  In reviewing a complaint

13   under rule 12(b)(6), all allegations of material fact are taken as true and construed in the

14   light most favorable to the non-moving party.  *Newman v. Sathyavaglswaran*, 287 F.3d

15   786, 788 (9th Cir. 2002); *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996).  The

16   Court must also assume that general allegations embrace the necessary, specific facts to

17   support them.  See *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir.

18   1994).  But, the Court is not required "to accept as true allegations that are merely

19   conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v.*

20   *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); see also *Warren v. Fox Family*

21   *Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003); *W. Mining Council v. Watt*, 643

22   F.2d 618, 624 (9th Cir. 1981).  Courts will not "assume the truth of legal conclusions

23   merely because they are cast in the form of factual allegations."  *Warren*, 328 F.3d at

24   1139; *W. Mining Council*, 643 F.2d at 624.  Furthermore, Courts will not assume that

25   plaintiffs "can prove facts which [they have] not alleged, or that the defendants have

26   violated . . . laws that have not been alleged."  *Associated Gen. Contrs. of Cal., Inc. v.*

27   *Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

28   ///

- 6 -

In deciding whether to dismiss a claim under Federal Rules of Civil Procedure, rule 12(b)(6), the Court is generally limited to reviewing only the complaint, but may review materials which are properly submitted as part of the complaint and may take judicial notice of public records outside the pleadings. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-689 (9th Cir. 2001); *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).  A dismissal under rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable  legal theory.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984).  If a rule 12(b)(6) motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).  Thus, leave to amend need not be granted when amendment would be futile.  *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002).

B.    Country Liability Under Federal Law.

A "municipal" public entity defendant (or equivalent official capacity defendant) may be held liable for a federal constitutional violation only if the violation was caused by official policy or custom.  *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691-694 (1978).  "Liability may attach to a municipality only where the municipality itself causes the constitutional violation through 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'"  *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002) (quoting *Monell*, 436 U.S. at 694).  A municipal "policy" exists when "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with

- 7 -

respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (plurality opinion); *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002) (*per curiam*).

There are three ways to establish a policy or custom of a municipality: (1) by showing "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Ulrich*, 308 F.3d at 984-85 (internal quotation marks and citations omitted). A municipal policy "may be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." *Nadell v. Las Vegas Metro. Police Dept.*, 268 F.3d 924, 929 (9th Cir. 2001) (internal quotation marks and citation omitted); *Menotti v. City of Seattle,* 409 F.3d 1113, 1146-1147 (9th Cir. 2005).

Municipalities can be liable, in certain situations, for single episodes of conduct that are not part of any pattern of illegality. See generally *Board of County Commissioners  of Bryan County v. Brown*, 520 U.S. 397, 405-406 (1997) [summarizing the Court's single-episode cases]. Municipal policymakers who fail to supervise and discipline police officers, when they act with deliberate indifference to citizens' rights, can create municipal liability, if lack of supervision then causes a deprivation. *Brown*, 520 U.S. at 406-410 [discussing liability for inadequate training and hiring policies]. For example, failure to take disciplinary action in response to an illegal arrest, when combined with other evidence, could tend to support an inference that there was a preexisting *de facto* policy of making illegal arrests: the policymaker did not discipline the employee because, in the policymakers' eyes, the employee's illegal conduct actually conformed with municipal policy. See *Bordanaro v. McLeod*, 871 F.2d 1151, 1166-1167 (1st Cir. 1989); *cf. City of St. Louis v. Praprotnik*, 485 U.S. 112, 131 (1988). ["Refusals

- 8 -

1   to carry out stated policies could obviously help to show that a municipality's actual

2   policies were different from the ones that had been announced."].

3        In California, sheriffs do not act for counties as county policymakers in matters of

4   execution and enforcement of state criminal law.  They are state actors when enforcing

5   criminal law and prosecuting violations.  *Venegas v. County of Los Angeles*, 32 Cal.4th

6   820, 826 (2004) [California sheriffs]; see *McMillian v. Monroe County*, 520 U.S. 781,

7   783 (1997) [Alabama sheriffs]; *Pitts v. County of Kern*, 17 Cal.4th 340 (1998) [California

8   district attorneys].

9        The United States Supreme Court has held that identification of officials with

10  policymaking authority for section 1983 purposes is controlled by state law.  "We begin

11  by reiterating that the identification of policymaking officials is a question of state law."

12  *City of St. Louis v. Praprotnik*, 485 U.S. at 124.  Under federal law, a state's highest court

13  is the final arbiter of state law.  See *Bennett v. Yoshina*, 140 F.3d 1218, 1225 (9th Cir.

14  1998) [citing *Johnson v. Fankell*, 520 U.S. 911, 916 (1997).]  [State's highest court is

15  final arbiter of state law.]

16       Note, however, that in *Brewster v. Shasta County*, 275 F.3d 803, 805 (9th Cir.

17  2001), the Ninth Circuit interpreted California law to conclude that sheriffs act for the

18  county rather than the state when investigating crime.  *Brewster* was decided before the

19  California Supreme Court decided *Venegas*, and contradicted an earlier California

20  appellate decision, *County of Los Angeles v. Superior Court (Peters)*, 68 Cal.App.4th

21  1166 (1998), that was directly on point, but had reached the opposite result.   In *Venegas*,

22  the California Supreme Court specifically disapproved *Brewster*, and held that the Ninth

23  Circuit erred in its interpretation of California law, and that the *Peters* opinion had

24  correctly interpreted California law on the issue of *Monell* policy liability for California

25  sheriffs.  *Venegas*, 32 Cal.4th at 835, 836.

26       In a pre-*Brewster*, pre-*Venegas* opinion citing the California Supreme Court's *Pitts*

27  opinion, the Ninth Circuit acknowledged that the California Supreme Court is the final

28  interpreter of California law.  *Weiner v. San Diego County*, 210 F.3d 1025, 1029 (9th Cir.

- 9 -

2000).  The California Supreme Court's finding that sheriffs are state actors in enforcing and prosecuting state criminal law is a substantive issue of state law that has now been determined with finality by the highest court of California, and that determination is binding on federal courts.  See *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1937); 28 U.S.C. § 1652 (substantive state law must be applied in federal courts).

Federal courts may determine whether a government official actually functions as a state or local official under relevant state law only when state law "simply labels as a state official an official who clearly makes county policy." *McMillian v. Monroe County*, 520 U.S. at 786.  In *Pitts* and *Venegas*, the California Supreme Court expressly invoked and applied the analytical framework set forth in *McMillian*, with review, analysis, and interpretation of relevant California state court cases, constitutional and statutory law.

The *Brewster* decision is not binding on this Court, because district courts are not bound by federal appellate decisions on matters of state law that were later rejected by a state's own highest court.  The rule of stare decisis is not controlling where there has been an intervening change in the law.  *Hart v. Massanari*, 266 F.3d 1155, 1171, n.28 (9th Cir. 2001).  "Supervening contrary decisions of the state's highest court . . . will render [a federal appellate panel decision on state law] clearly wrong and thus no longer precedential." *Woodfield v. Bowman*, 193 F.3d 354, 360, n.15 (5th Cir. 1999).  "[O]ne panel of this court must follow a prior panel's interpretation of state law, absent a supervening declaration to the contrary by that state's courts or an intervening change in the state's law." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1231 (10th Cir. 2000), cert. denied, 531 U.S. 926 (2000).  The *Venegas* case is a "supervising declaration to the contrary" of *Brewster* on the subject of *Monell* liability for policies of California sheriffs under section 1983.

///
///
///
///

- 10 -

IV

ARGUMENT

A.    <u>Introduction To Argument</u>.

The Fourteenth Amendment was intended "to protect the people from the State, not to ensure that the State protected them from each other." *DeShaney v. Winnebago County*, 489 U.S. 189, 195 (1989).  Mr. Bruce did not act under color of law or in the scope of employment when he shot his wife, so there is no remedy based on the wife's suffering and death against his employer, the County.

B.    <u>Incurable Conflict of Interest</u>.

Plaintiff in-laws have created a conflict of interest between themselves and the interests of the children they represent.  They allege that the County caused the wife's suffering and death, but the children could make almost-identical allegations against the in-laws, based on the same general facts.

For example, the complaint alleges that the County knew of Mr. Bruce's psychological shortcomings and allowed him to bring a gun home from work.  However, the in-laws also knew about Mr. Bruce's psychological shortcomings (how else could they allege them) and they allowed him to bring a gun into their house, where he shot his wife.  The in-laws allege that the County provided Mr. Bruce with the gun, but the father-in-law, plaintiff Jim Maxwell, gave guns to Mr. Bruce, and stated after the shooting that "any guns he owned, with the exception of two of them . . . I bought for him.  You know, it's just, this is probably partly my fault."  (Mr. Maxwell's statement was audio-recorded.)[2]

As another example of how the in-laws have pleaded themselves into a conflict, the complaint alleges that the County caused the wife's death by delaying medical care.  Again, the in-laws could be accused of the same thing.  The wife was able to walk to a

---

[2]  Mr. Maxwell's statement is mentioned solely for the purpose of making a representation to this Court that there is a genuine basis for a conflict of interest.  The County does not offer Mr. Maxwell's statement as evidence with this motion, even though it would be admissible over hearsay objection as a party statement.

- 11 -

1    phone and place a call after she was shot.  [¶ 3.]  Thus, the in-laws could have walked her

2    to their car and driven her towards the nearest hospital.  Instead, they waited while

3    emergency medical personnel from Alpine and Viejas drove long distances to their

4    house.  When emergency medical personnel arrive at a house where a shooting has just

5    occurred, they do not simply walk in and risk being shot themselves, so further delay was

6    foreseeable after their arrival.  The in-laws could have avoided those delays by

7    immediately driving the wife to the nearest hospital.

8         As a further example of conflict, the complaint suggests that responding deputies

9    acted badly because the shooter was "one of their own."  [¶ 3.]  The same allegation

10    could easily be turned against the in-laws.  Mr. Bruce was "one of their own" as a

11    resident of their house and a member of their family.  As far as the complaint shows, the

12    in-laws were present at all times, but they made no effort to call for help.  [¶¶ 32-34.]

13    The in-laws could just as easily be accused of having tried to protect "one of their own."

14         The County does not suggest that such allegations against the in-laws would

15    ultimately be successful, much less fair.  However, such allegations would be no more

16    far-fetched or less fair than the in-laws' allegations against the County.  If the children

17    had conflict-free personal representatives and counsel, the in-laws could be included as

18    defendants along with the County.

19         The conflict is not limited to the complaint; one can imagine closing argument at

20    trial: "the County hired Mr. Bruce and provided a gun, but the in-laws let him live in their

21    house and bought him guns."

22         In *Klemm v. Superior Court (County of Fresno)*, the issue was whether an attorney

23    could represent both spouses in an uncontested divorce.  *Klemm,* 75 Cal.App.3d 893,

24    895-96 (1977).  The Court of Appeal sent the case back to the trial court to make a

25    determination whether the spouses' consents to joint representation were knowing,

26    informed and given after a full disclosure.  *Id.* at 901.  However, the Court of Appeal

27    ///

28    ///

07-cv-2385-JAH(WMc)

warned that attorneys who undertake to represent parties with divergent interests owe the
highest duty to make a full disclosure of all facts and circumstances necessary to enable
the parties to make a fully informed decision regarding the subject matter of the
litigation, including the areas of potential conflict and the possibility and desirability of
seeking independent legal advice. *Ishmael* v. *Millington*, 241 Cal.App.2d 520 (1966).
The validity of any agreement negotiated without independent representation of each of
the parties is vulnerable to easy attack as having been procured by misrepresentation,
fraud and overreaching. *Gregory* v. *Gregory*, 92 Cal.App.2d 343 (1949).

In *Tsakos Shipping and Trading, S.A. v. Juniper Garden Town Homes, Ltd.,* 12
Cal.App.4th 74 (1993), the Court of Appeal made these observations:

> Attorneys bear a fiduciary relationship of the highest character to their
> clients, and may not assume positions inconsistent with the interests of their
> clients. [Citation omitted.] "By virtue of this rule an attorney is precluded
> from assuming any relation which would prevent him from devoting his
> entire energies to his client's interests. Nor does it matter that the intention
> and motives of the attorney are honest. The rule is designed not alone to
> prevent the dishonest practitioner from fraudulent conduct, but as well to
> preclude the honest practitioner from putting himself in a position where he
> may be required to choose between conflicting duties, or be led to an attempt
> to reconcile conflicting interests, rather than to enforce to their full extent the
> rights of the interest which he should alone represent. [Citation.]" [Citation
> omitted.]
>
> When an attorney owes a duty of loyalty to two clients, it is
> impossible for him or her to advise either one as to a disputed claim against
> the other. [Citation omitted.] An attorney's simultaneous representation of
> clients with differing interests presents a classic situation of conflict. Each
> client is entitled to unimpaired loyalty of counsel; an attorney representing
> clients with conflicting or potentially conflicting interests may be tempted to
> favor the interests of one over the other. [Citation omitted.]

*Tsakos*, 12 Cal.App.4th at 75-76.

In this case, the conflict is on two levels: the personal representation level, because
the in-laws personally represent the interests of the children and the estate of which they
would be beneficiaries, and the legal representation level, because plaintiffs' counsel
jointly represents all parties with conflicting interests. The conflict is incurable, because
the children are too young to intelligently waive it, or give informed consent to conflicted
personal and legal representation.

- 13 -

1   The County's interest in the conflict results from the likelihood that issues already

2   raised in the complaint will not be thoroughly litigated against all parties while the

3   conflict exists.  It is possible that those shortcomings will not be blamed on the children,

4   because they are too young and vulnerable to understand or assert their interests.  An

5   expensive and time-consuming reversal and retrial might be necessary, as happened in

6   the *Tsakos* case cited above.  The Court should exercise its inherent power to protect

7   vulnerable parties who cannot safeguard their own rights.

8       C.    Color of Law and Scope of Employment.

9       A person acts under color of law when acting or purporting to act in the

10  performance of official duties under any state, county or municipal law, ordinance or

11  regulation.  *Ninth Circuit Model Civil Jury Instructions* No. 9.2, 9.4.  Mr. Bruce did not

12  act under color of law when he shot his wife, so the County cannot be federally liable for

13  the shooting.  *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 836 (9th cir. 1996) [County of

14  San Diego not liable for violent crime committed by its off-duty Sheriff's deputy using

15  information learned on the job].  By the same token, Mr. Bruce did not act in the scope of

16  employment under California law when he shot his wife.  *Ibid.*

17      D.    No Liability for Providing Guns.

18      There is no liability merely for providing a gun to a person who may have

19  psychological problems.  In *Jacoves v. United Merchandising Corp.*, 9 Cal.App.4th 88

20  (1992), the California Court of Appeal affirmed the trial court's judgment on the

21  pleadings in favor of a firearms dealer in a negligence action attempting to hold the

22  dealer liable for the suicide death of 20-year-old Jonathan Jacoves.  Plaintiffs alleged that

23  Jacoves walked into a store and tried to buy a handgun and ammunition.  When he

24  learned that he could not purchase the gun until the statutory waiting period had passed,

25  he left the store.  *Id.* at 118.   Later, he returned to the store to buy a rifle for which there

26  was no waiting period.  "At the time of this purchase, [Jacoves] appeared youthful,

27  confused, distraught, and trembling.  He purchased a rifle and ammunition and was

28  instructed in the use of the rifle.   On that same day, he committed suicide with the. . .

- 14 -

rifle." *Id.* The Court of Appeal held, as a matter of law, that such allegations were insufficient to establish that the store owed Jacoves a duty of care. *Id.* The court found that the store had no reason to anticipate that Jacoves "intended to commit suicide." *Id.* By the same token, allegations that Mr. Bruce had psychological problems did not give the County reason to anticipate that he would shoot his wife.

E.    No Section 1983 Hiring Liability -- The *Brown* Case.

Federal hiring liability requires that the injury be a plainly obvious consequence of a hiring decision. In *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, the Supreme Court established strict standards for federal liability based on a county's hiring of a deputy sheriff who then committed a constitutional violation. A plaintiff must demonstrate that the employee "was highly likely to inflict the *particular* injury suffered by the plaintiff." *Brown*, 520 U.S. at 412.

The *Brown* case arose from physical force used by Bryan County Deputy Sheriff Burns, following a high-speed pursuit of the Browns' vehicle. *Brown*, 520 U.S. at 400-401. Deputy Burns had prior criminal convictions for assault and battery, resisting arrest, public drunkenness, and other offenses. An expert testified that Deputy Burns' record showed a "blatant disregard for the law" that may manifest itself "in abusing the public or using excessive force." Deputy Burns was also one of the sheriff's relatives. The jury found, based on the evidence, that the sheriff was deliberately indifferent in hiring Deputy Burns. The issue for the Supreme Court was whether the sheriff's deficient screening of Deputy Burns' record justified *Monell* liability.

The Supreme Court held that causation was insufficient as a matter of law. Mrs. Brown asserted that the sheriff's decision to hire Deputy Burns set the wheels in motion that led to deprivation of her federally protected rights -- compare with plaintiffs' allegation in this case assert that the County's decision "to hire Bruce as a San Diego County Sheriff's Deputy and provide him with a deadly weapon" resulted in the shooting. [¶ 30.]

///

- 15 -

The Supreme Court held that such liability comes too close to *respondeat superior*, which is not authorized by section 1983. The real issue ought to be whether there is a sufficiently *direct* link between the alleged deficiencies, on one hand, and violation of the plaintiff's federal rights, on the other hand. The Supreme Court held that *normally* the link is too tenuous. A successful plaintiff would have to show that it was "very likely" that "this officer" would "inflict the particular injury suffered by the plaintiff."

Applied to this case, plaintiffs would have the obviously-impossible burden of showing that it was very likely Mr. Bruce would go home and shoot his wife as a plainly obvious result of the decision to hire him as a deputy sheriff. The wife's shooting would have to be "a plainly obvious consequence of the hiring decision." *Brown*, 520 U.S. at 412. The complaint, however, affirmatively alleges in great detail that Mr. Bruce already had psychological issues before the County hired him. [¶¶ 17-30.] He would have had the same issues whether or not the County hired him.

In the *Brown* case, even though the jury found that hiring Deputy Burns was deliberate indifference, and even though Deputy Burns had prior criminal convictions for unlawfully using force on other people, his use of excessive force was not a "plainly obvious consequence of the hiring decision." *Brown*, 520 U.S. at 414. Therefore Bryan County could not be federally liable based on the hiring decision.

F.     No California Governmental Hiring Liability -- The *de Villers* Case.

No cause of action can be stated directly against a California public entity for alleged negligent hiring and supervision of an employee. Toxicologist Kristin Rossum murdered her husband, Greg de Villers, at home with toxic fentanyl taken from the County of San Diego, for whom she worked. Rossum abused methamphetamine before the County hired her, but the County failed to perform a required drug test or background check before giving her full-time employment. Rossum murdered her husband a few days after he confronted her about her drug use, and her secret love affair with her supervisor. *de Villers v. County of San Diego*, 156 Cal.App.4th 238, 244-245 (2007). ///

A subsequent audit of the County office where Rossum worked disclosed that fifteen fentanyl patches impounded in three different cases, and the contents of a vial of fentanyl used as a standard, were missing.  Rossum had been involved in all three cases, and had logged in the fentanyl standard.  Rossum's supervisor (who was also her secret lover) authorized Rossum's access to those substances.  Also, Rossum and her supervisor/lover both knew that the County did not routinely test for fentanyl during autopsies.  Before the murder they traveled together on the County's behalf to attend a conference of forensic toxicologists, at which they received a copy of a journal that included a paper discussing 25 deaths caused by fentanyl.  *de Villers*, 156 Cal.App.4th at 245-246.

The *de Villers* plaintiffs alleged two theories of liability against the County: (1) it negligently hired and supervised Rossum and this negligence was a proximate cause of de Villers' death; and (2) it breached its mandatory duty to guard against misappropriation of its drugs, and breach of that duty was a proximate cause of de Villers' death.  A jury found against the County on both theories, and awarded substantial damages.  *de Villers*, 156 Cal.App.4th at 247.

In reversing judgment against the County (without possibility of retrial), the Court of Appeal observed that when a party is injured by a tortfeasor and seeks to affix liability on the tortfeasor's employer, the injured party ordinarily must demonstrate either (1) the employer violated a duty of care it owed to the injured party and this negligence was a proximate cause of the resulting injury (the *direct* liability theory), or (2) the tortfeasor-employee was liable for committing the tortious conduct that caused the injury while acting within the course and scope of his or her employment (the *vicarious* liability theory).  Vicarious liability for Rossum was not an issue because the murder was not in the scope of Rossum's employment.  On a *direct* liability theory against a governmental agency, the injured party must identify a "specific statute declaring [the entity] to be liable, or at least creating some specific duty of care" by the agency in favor of the injured party.  *Eastburn v. Regional Fire Protection Authority*, 31 Cal.4th 1175, 1183

- 17 -

(2003); accord, *Searcy v. Hemet Unified School Dist.*, 177 Cal.App.3d 792, 802 (1986). *de Villers*, 156 Cal.App.4th at 247-248.

The *de Villers* opinion noted that in both *Zelig v. County of Los Angeles*, 27 Cal.4th 1112 (2002) and *Eastburn*, 31 Cal.4th 1175, the California Supreme Court reiterated the distinction between the direct liability of a public entity -- which must be founded on a specific statute either declaring the entity to be liable or creating a specific duty of care *apart from* the general tort principles embodied in Civil Code section 1714 -- and the vicarious liability of a public entity for torts committed by its employees within the course and scope of their employment with the agency.  In *Zelig,* the County of Los Angeles was sued for failing to protect against a criminal assault on public property in which the perpetrator killed a person.  *Zelig* explained that:

> "[T]he public entities' potential liability for the death of plaintiffs' mother arises under the California Tort Claims Act . . . and has two sources: (1) the public entities' liability based on their own conduct and legal obligations, and (2) the public entities' liability, based on respondeat superior principles, for the misconduct of their employees that occurred in the scope of their employment.  The Tort Claims Act draws a clear distinction between the liability of a public entity based on its own conduct, and the liability arising from the conduct of a public employee.  Although the Act provides that a *public employee* generally is liable for an injury caused by his or her act or omission 'to the same extent as a private person' (Gov. Code, § 820, subd. (a)) and that, when the act or omission of the public employee occurs in the scope of employment the public entity will be vicariously liable for the injury (Gov. Code, § 815.2), the Act contains *no* provision similarly providing that a *public entity* generally is liable for its own conduct or omission to the same extent as a private person or entity.  Rather, the Act provides that a public entity is not liable for an injury '[e]xcept as otherwise provided by statute . . . .' (Gov. Code, § 815.)  Certain statutes do provide expressly for public entity liability in circumstances that are somewhat parallel to the potential liability of private individuals and entities but, as past cases have explained, ' "[T]he intent of the [Tort Claims Act] is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances . . . ." ' (*Brown v. Poway Unified School Dist.* 4 Cal.4th 820, 829 (1993).)"

*Zelig*, 27 Cal.4th at 1127-1128; *de Villers*, 156 Cal.App.4th at 251-252.

The *de Villers* opinion held that there is no direct liability under California law based on a public entity's allegedly negligent hiring and supervision practices.  The Court's opinion in *Munoz v. City of Union City*, 120 Cal.App.4th 1077 (2004), had earlier

- 18 -

1 concluded that no statutory basis for such a claim existed.  Any California law claim

2 against the County based on the theory that the County negligently hired or supervised

3 Mr. Bruce is barred.  *de Villers*, 156 Cal.App.4th at 252-253.

4        G.      No Federal Liability On Danger-Creation Theory.

5        In *Wood v. Ostrander*, 879 F.2d 853, 588-590 (9th Cir. 1989), a state trooper left

6 the plaintiff stranded in a high crime area after towing the car in which she was riding,

7 and she was criminally attacked.  The Ninth Circuit held there could be section 1983

8 liability if the trooper "affirmatively placed the plaintiff in a position of danger."  In this

9 case, Mr. Bruce is the one who affirmatively placed his wife in danger by shooting her.

10 After the shooting, no affirmative act placed the wife in worse peril than she already

11 faced from the gunshot injury.

12        H.      No California Liability On Danger-Creation Theory.

13        In *Davidson v. City of Westminster*, 32 Cal.3d 197 (1982), a man stabbed Ms.

14 Davidson while she was using a laundromat.  At the time, police officers had the

15 laundromat under surveillance for the purpose of preventing assaults and apprehending

16 the perpetrator of earlier stabbings.  The officers knew Ms. Davidson was in the

17 laundromat, and saw a man enter whom they believed was the likely perpetrator in at

18 least one prior incident, but did nothing to prevent her from being stabbed.  The

19 California Supreme Court concluded the officers had no duty to protect Ms. Davidson.

20 Ordinarily, a person does not have a duty to control the conduct of another, or to warn

21 those endangered by such conduct.  *Davidson*, 32 Cal.3d at 203.  However, such a duty

22 may arise if (1) there is a special relationship between the person and a third party which

23 imposes a duty upon the person to control the third party's conduct, or (2) there is a

24 special relationship between the person and the injured party which gives the injured

25 party a right to protection.  *Ibid*.  With respect to the police officers' relationship with the

26 man who stabbed Ms. Davidson, the officers' mere proximity to the assailant, even with

27 knowledge of his "assaultive tendencies," did not establish a special relationship

28 imposing a duty to control the assailant's conduct.  *Davidson*, 32 Cal.3d at 205.  Ms.

1    Davidson was not aware of the officers' presence, and did not rely upon them for

2    protection. *Davidson*, 32 Cal.3d at 208.

3         In *Williams v. State of California*, 34 Cal.3d 18 (1983), Ms. Williams was injured

4    when a piece of a vehicle's brake drum crashed through the windshield of a car in which

5    she was a passenger. According to Ms. Williams, CHP officers negligently investigated

6    the accident and virtually destroyed her opportunity of obtaining third-party

7    compensation. *Id.* at 21–22. The California Supreme Court concluded the officers had no

8    special relationship with Ms. Williams giving rise to a duty. *Williams*, 34 Cal.3d at 21.

9    Broadly speaking, a person who has not created a peril has no duty to come to the aid of

10   another. *Williams*, 34 Cal.3d at 23. However, under the " 'good Samaritan' " rule, a

11   person who undertakes to come to the aid of another is liable if "his failure to exercise

12   such care increases the risk" of harm or "the harm is suffered because of the other's

13   reliance upon the undertaking." *Ibid.* These rules apply to law enforcement officers as

14   well as private citizens. *Id.* at 24. Law enforcement officers may be liable for

15   affirmative acts that create a peril or increase the risk of harm, or for failing to act after

16   promising to do so. *Ibid*. However, a special relationship cannot arise *solely* from the

17   fact of dependency. *Id.* at 26, 28, fn. 9, disapproving *Clemente v. State of California*, 101

18   Cal.App.3d 374, 379–380 (1980). The officers did not create Ms. Williams' peril. They

19   did not affirmatively contribute to, increase, or change the risk which otherwise existed.

20   They did not voluntarily assume to protect her interests. No special relationship was

21   established absent detrimental reliance on the officers' conduct, or statements which

22   induced a false sense of security and thereby worsened the plaintiff's position. *Williams*,

23   34 Cal.3d at 27–28.

24        The special relationship rule is narrow, to be applied in a limited class of unusual

25   cases. *Adams v. City of Fremont*, 68 Cal.App.4th 243, 279 (1998); *M.B. v. City of San

26   Diego*, 233 Cal.App.3d 699, 704–705 (1991). The rule is not triggered "simply because

27   police officers responded to a call for assistance and took some action at the scene."

28   *Adams*, 68 Cal.App.4th at 279; see *Von Batsch v. American Dist. Telegraph Co*., 175

- 20 -

Cal.App.3d 1111, 1122–1123 (1985).  It is not enough to assert that the law enforcement officers took control of a situation.  *Adams*, 68 Cal.App.4th at 280.  Courts have found no duty and, thus, have rejected claims of negligence against law enforcement officers.  See, e.g., *Adams*, 68 Cal.App.4th at 288; *M.B. v. City of San Diego,* 233 Cal.App.3d at 704–706; *Lopez v. City of San Diego*, 190 Cal.App.3d 678, 682 (1987); *Von Batsch*, 175 Cal.App.3d at 1124–1125; *Jackson v. Clements*, 146 Cal.App.3d 983, 988–989 (1983); *Shelton v. City of Westminster*, 138 Cal.App.3d 610, 621–622 (1982).

In *Mann v.  State of California*, 70 Cal.App.3d 773 (1977), a CHP officer saw two cars stranded on the freeway.  He stopped behind them, turned on his flashing amber light, and tried to start one of the cars.  When a tow truck arrived, the officer left without advising that he was leaving, without putting out flares, and without waiting for the tow truck with its flashing amber light to assume a protective position.  A few minutes later, an elderly driver sideswiped one of the cars and struck the people around them.  The trial court ordered directed verdict for the state, but the Court of Appeal reversed, concluding that a special relationship could have been found.  *Mann*, 70 Cal.App.3d at 776–777, 779.  Saying that the special relationship theory was an expanding area in tort law, and "the law appears to be heading toward a recognition of the duty to aid or protect in any relation of dependence or of mutual dependence," *Id*. at 779-780, the court concluded the plaintiff was dependent on the officer as an expert charged with traffic safety.  *Id.* at 780.  Thus, once the officer stopped and observed the plaintiff's danger, he had a duty to use ordinary care to protect the plaintiff.  *Ibid*.

However, a more recent case, *Minch v. California Highway Patrol,* 140 Cal.App.4th 895 (2006), questioned whether the *Mann* opinion is good law, stating that *Mann* was "an anomaly.  Indeed, although *Mann* has not been expressly disapproved, the legal foundations of its holding have since been rejected by the California Supreme Court."  *Id*. at 903.  Over thirty years ago, the *Mann* opinion predicted that California law appeared "to be heading toward a recognition of the duty to aid or protect in any relation of dependence."  *Mann*, 70 Cal.App.3d at 779–780.  Within only six years, the California

- 21 -

Supreme Court repudiated the idea that dependency alone establishes duty.  *Williams*, 34 Cal.3d at 26, 28, fn. 9; *Minch,* 140 Cal.App.4th at 903.  The *Mann* opinion also suggested that knowledge of another's peril can establish duty.  *Mann*, 70 Cal.App.3d at 780.  That view was repudiated by the California Supreme Court within five years.  *Davidson*, 32 Cal.3d at 205.  *Minch*, 140 Cal.App.4th at 904.

The *Mann* case was viewed by the California Legislature as a dangerous extension of the liability of peace officers and their employers.  *Williams*, 34 Cal.3d at 25.  In response, the Legislature enacted Government Code section 820.25 as an urgency statute to provide officers with flexibility in assisting stranded motorists and to avoid public responsibility for damages on this theory of expanded damages.  Stats. 1979, ch. 806, §§ 1–2, p. 2796.  The *Minch* opinion observed that "*Mann* is a legal derelict that exists solely to confuse."  *Minch*, 140 Cal.App.4th at 904-05.  Dependence and knowledge of peril do not create a duty on the part of law enforcement officers.  In this case, knowledge of the wife's peril after the shooting and her dependence on rescuers did not trigger a duty for law enforcement officers to abate a peril they did not create.

I.    Specific Causes Of Action.

1.    First Cause Of Action.

The first cause of action is by all plaintiffs against all defendants for depriving plaintiffs of "familial relationships in violation of the Fourth Amendment" by causing the wife's death.  [¶ 41.]

In *Smith v. City of Fontana*, 818 F.3d 1411 (9th Cir.), *cert. denied*, 484 U.S. 935 (1987), the court found that children could assert a substantive due process claim (not a Fourth Amendment claim) for deprivation of their own right to continuation of their relationship with their father, who was allegedly killed by excessive force.  However, in *Estate of Johnson v. Village of Libertyville*, 819 F.3d 174 (7th Cir. 1987), the court determined that parents could not seek section 1983 damages for their deceased child, and that any such claim belonged to the decedent's estate.  Thus the in-laws have no claim in their own rights under the first cause of action.

- 22 -

However, the entire first cause of action is contingent on the theory that the wife's suffering and death resulted from federal constitutional deprivations.  As discussed in foregoing Section IV C., E. and G., Mr. Bruce did not act under color of law, and the wife's suffering and death did not otherwise result from constitutional deprivations.  Therefore the first cause of action states no claim against any defendant.

      2.  Second Cause Of Action.

The second cause of action is by all plaintiffs against the County of San Diego for hiring policies that allegedly caused the wife's death, and because Mr. Bruce utilized a gun furnished by the County.  Plaintiffs allege that "failure of the San Diego Sheriff's Department to implement safe and reasonable hiring policies and practices amounts to deliberate indifference . . . ."  [¶ 49.]

As to hiring policies amounting to deliberate indifference, this cause of action is squarely precluded by the *Brown* case discussed in foregoing Section IV E.  In *Brown*, the Supreme Court found no causation, even though a jury had found deliberate indifference based on substantial evidence.  The gun allegations are tied to hiring liability, so they fail for the same reason.  They also fail under the *Jacoves* case discussed in foregoing Section IV D.

*Jacoves* was a California tort case, so an argument could be made that *Jacoves* does not bar a *Monell* claim against the County based on a policy of providing guns to law enforcement officers.  Such an argument would fail under the *Venegas* case, discussed in foregoing Section III B., because guns are provided to Sheriff's deputies to execute and enforce criminal law, and California sheriffs act for the state, not for counties, when making or implementing policies for executing and enforcing criminal law.

///

///

///

///

- 23 -

1

         3.      Third Cause Of Action.

2

      The third cause of action, by the in-laws as personal representatives for the

3 children, is against all defendants, and alleges the wife's wrongful death.  [¶ 53.]  It fails

4 for the reasons explained in foregoing Section IV D. [no County liability for providing a

5 gun], and also because of the *de Villers* case discussed in foregoing Section IV F. [no

6 County liability for negligently hiring a killer], and also because of the cases discussed in

7 foregoing Section IV H. [no liability on a California danger-creation tort theory].

8

         4.      Fourth Cause Of Action.

9

      The fourth cause of action is by in-law Jim Maxwell as the wife's estate executor

10 against all defendants, and alleges the wife died as the result of acts or omissions

11 attributable to the County.  [¶ 56.]  It fails for the same reasons discussed in the First

12 through Third Causes of Action.  There is no viable federal or state theory under which

13 the County would be liable for the wife's suffering and death, so the estate representative

14 has no claim against the County.

15

         5.      Fifth Cause Of Action.

16

      The fifth cause of action is not directed against the County, so it is not addressed in

17 this motion.

18

         6.      Sixth Cause Of Action.

19

      The sixth cause of action is by in-law Jim Maxwell against the County for

20 excessive force.  [¶ 67.]  It is not addressed in this motion.

21

         7.      Seventh Cause Of Action.

22

      The seventh cause of action is also by in-law Jim Maxwell against the County for

23 excessive force.  [¶ 72.]  It is not addressed in this motion.

24

         8.      Eighth And Ninth Causes Of Action.

25

      The eighth and ninth causes of action are for intentional and negligent infliction of

26 emotional distress, respectively, and are by all plaintiffs against all defendants.  To the

27 extent these two causes of action seek to hold the County liable for inflicting emotional

28 distress by causing the wife's suffering and death, that claim should be severed from the

1  remaining allegations and dismissed for the reasons set forth under the First through

2  Fourth Causes of Action discussed above.

3      The Eighth and Ninth Causes of Action lump all other allegations together.  Except

4  for claims that the County caused the wife's suffering and death (First through Fourth

5  Causes of Action) and claims of excessive force by Jim Maxwell (Sixth and Seventh

6  Causes of Action) discussed above, the Court should order a more definite statement of

7  County liability as to all other claims reflected in the Eighth and Ninth Causes of Action.

8  The County cannot determine which claims are directed at the County, and cannot

9  identify events or circumstances from which those claims arise sufficient to formulate a

10  meaningful answer.  As examples of unanswerable allegations, consider these:

11  "Defendants' incompetence or arrogance even caused the news media to believe Jim was

12  a 'suspect'" and "Kristin's young boys were also mistreated by defendants."  [¶ 37.]

13  V

14  CONCLUSION

15      It will be difficult to move this case forward until the conflict of interest issue is

16  resolved.  When responding to this motion, plaintiffs will have to choose between whose

17  interests to put first, the in-laws or the children.  The in-laws have pleaded themselves

18  into a proverbial glass house and are throwing stones at the County.  Morally and legally,

19  blame for the shooting rests with Mr. Bruce, not with those who tried to rescue his

20  victim.

21  DATED:  January 10, 2008    Respectfully submitted,

22  JOHN J. SANSONE, County Counsel

23  By: s/ MORRIS G. HILL, Senior Deputy
   Attorneys for Defendant County of San Diego
24  E-mail: morris.hill@sdcounty.ca.gov

- 25 -

07-cv-2385-JAH(WMc)