JOHN J. SANSONE, County Counsel (State Bar No. 103060)
County of San Diego
By MORRIS G. HILL, Senior Deputy (State Bar No. 97621)
1600 Pacific Highway, Room 355
San Diego, California 92101-2469
Telephone: (619) 531-4877;  Fax: (619) 531-6005
E-mail: morris.hill@sdcounty.ca.gov

Attorneys for Defendant County of San Diego

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JIM MAXWELL and KAY MAXWELL, individually and as guardians of TREVER ALLEN BRUCE and KELTEN TANNER BRUCE; and JIM MAXWELL, as executor of the ESTATE OF KRISTIN MARIE MAXWELL-BRUCE,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>COUNTY OF SAN DIEGO; ALPINE FIRE PROTECTION DISTRICT; VIEJAS FIRE DEPARTMENT; DEPUTY LOWELL BRYAN "SAM" BRUCE; Does 1-50,<br><br>　　　　Defendants. | No. 07-cv-2385-JAH(WMc)<br><br>REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE FIRST, SECOND, THIRD AND FOURTH CAUSES OF ACTION OF PLAINTIFFS' COMPLAINT AND CERTAIN CLAIMS IN THE EIGHTH AND NINTH CAUSES OF ACTION, AND FOR A MORE DEFINITE STATEMENT AS TO OTHER CLAIMS IN THE EIGHTH AND NINTH CAUSES OF ACTION<br><br>Date: February 19, 2008<br>Time: 2:30 p.m.<br>Dept.: Courtroom of the Honorable John A. Houston<br>Trial Date: None |

I

INTRODUCTION

This Memorandum replies to Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant County's Motion to Dismiss, hereinafter called the "Opposition."

///

///

///

07-cv-2385-JAH(WMc)

II

UNOPPOSED JUDICIAL NOTICE

Plaintiffs have not opposed the County's request for judicial notice of Lowell Bruce's plea of guilty to manslaughter in which he declared: "I shot and killed my wife . . . ." The Opposition argues that the wife was killed by *other* defendants, not Mr. Bruce, after he shot her. (Opposition 6:23-24.) If that were true, Mr. Bruce would not be guilty of manslaughter, yet he is guilty as a matter of law. Issue preclusion (collateral estoppel) applies where (1) the issue decided in the prior case is identical to the one now presented; (2) there was a final judgment on the merits in the prior case; and (3) the party to be estopped was a party or in privity with a party to the prior adjudication. *See San Remo Hotel, L.P. v. San Francisco City & County,* 364 F.3d 1088, 1096 (9th Cir.), *cert. granted in part,* 543 U.S. 1032 (2004), *aff'd* 545 U.S. 323 (2005). The third element of issue preclusion is in doubt for parties other than Lowell Bruce, but the first two elements are there for everyone, justifying an especially critical analysis of allegations that anyone besides Lowell Bruce killed his wife.

III

ARGUMENT

A.  Incurable Conflict of Interest.

The Opposition argues that "[t]he County has manufactured this red herring as a last ditch attempt at dismissal." (Opposition, 2:21-22.) *Not so,* for two reasons:

(1)  The conflict results from *plaintiffs'* allegations -- *if* allegations are "manufactured," plaintiffs manufactured them;

(2)  The conflict is not a basis for dismissal. It is raised in this motion because this is defendants' first appearance, and such a conflict should be addressed at the first opportunity.

The Opposition scornfully calls the conflict "utterly specious," "patently frivolous," "nonsensical" and "outlandish." (Opposition 20-21.) Why such invective? And why ignore the shocking fact that *Jim Maxwell expressly admitted partial fault for*

1  *the shooting while speaking into a microphone:* "any guns he [killer Lowell Bruce]
2  owned, with the exception of two of them . . . I bought for him.  You know, it's just, this
3  is probably partly my fault."  Why ignore a bulletproof party-admission of fault?
4       Plaintiff in-laws created the conflict of interest by asserting their own claims for
5  the wife's death *and also* claims for the wife's death as personal representatives of Mr.
6  Bruce's children. For example, the Complaint alleges that "shortly" after the shooting,
7  plaintiff (in-law) Jim Maxwell "seeing his daughter bleeding -- confronted Bruce [the
8  shooter] about the seriousness of the injury" and "Bruce -- rather than calling '911' or
9  requesting medical assistance for his victim wife -- instead called a supervisor at the
10 Sheriff's Department and confessed to his employer that he had just shot his wife."
11 (Complaint ¶¶ 33-34.)  The obvious question to Mr. Maxwell at trial will be: "why didn't
12 you call '911' yourself?"  The children's counsel should be asking such questions right
13 now, not heaping scorn on anyone else who asks them.
14      Allegedly Lowell Bruce had a propensity for violence that was *so obvious* that the
15 County and *eight* other agencies recognized it in pre-employment evaluations.
16 (Complaint ¶¶ 17-30.)  How could the in-laws, sharing their house with Mr. Bruce, not
17 have known?  The opposition argues there are "several obvious ways" the in-laws *could*
18 have learned of Mr. Bruce's allegedly-obvious character trait for violence *after* the
19 shooting, but does not reveal them, and does not deny pre-shooting knowledge.
20 (Opposition 20:21-24.)  When trying to explain why the in-laws did not simply drive the
21 victim to the hospital, the opposition argues that "Kristin had already called 911."  That
22 does not begin to explain why the in-laws could not have acted before anyone else
23 arrived.
24      Plaintiffs' present counsel claims not to see a potential conflict, so will be of no
25 help resolving it.  The Court has  inherent authority to assure that the children's true
26 interests are being spoken for.  The Court should exercise its inherent power to protect
27 vulnerable parties who are too young to safeguard their own rights.
28 ///

B. <u>Specific Causes Of Action</u>.

    1. First Cause Of Action.

Plaintiffs' Opposition focuses on the in-law's standing, but ignores whether a Fourth Amendment violation has been stated for the wife's death. The Opposition does not dispute that Mr. Bruce *did not act under color of law* when he shot his wife. The Opposition does not attempt to distinguish (or even cite) the leading Ninth Circuit case, *Van Ort v. Estate of Stanewich,* 92 F.3d 831 (9th Cir. 1996). The Opposition argues special-relationship and danger-creation liability, but fails to cite a single case in which a Fourth Amendment claim was stated against emergency responders for allegedly causing a crime victim to die of a fatal injury that had *not* been inflicted under color of law.

The Opposition manufactures a scenario for special-relationship liability from conclusory arguments, ignoring the rule that the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The newly-minted scenario is that deputies took the wife into their "custody" and "seized" her. (Opposition 1:3-6; 1:12, 2:4; 2:15; 2:17; 3:14; 7:6-7; 12:4-5; 13:26-27; 18:2-3; 19:19-20; 12:22-23.) **The Complaint contains no such allegations.** It alleges that plaintiffs Jim Maxwell and Kay Maxwell were "unlawfully detained and falsely imprisoned" and "restrained," but *not* that the wife was "seized" and taken into "custody." (Complaint ¶ 37.) If such custody allegations *could* have been made for the wife, they *would* have been made with the other custody allegations.

The Opposition also cites five scenarios for danger-creation liability, each based on conclusory language that is devoid of meaningful facts. They are as follows:

(1) Deputies "locked down the scene of the shooting." (Opposition 1:5-6.) However, access to any serious crime scene is restricted, so all such scenes are "locked down." Whether or not scenes are "locked down," medical rescue *always* comes before crime investigation. Plaintiffs allege no facts suggesting that medical professionals were kept away from the victim because the scene was "locked down."

- 4 -

1  (2) Deputies "prevented" the in-laws "from doing anything to help her" [the victim]. (Opposition 1:8-9.) "Prevented" how? "Help her" how? Where are the factual allegations?

(3) Deputies "refused to allow" the victim to go to the hospital. (Opposition 1:7-8.) "Refused" how? If that happened, why does the Complaint attempt to allege liability for "performing . . . transportation . . . in a grossly negligent manner?" (Complaint ¶ 38.)

(4) The deputies' medical care "demonstrated deliberate indifference to [decedent's] obvious medical condition." Opposition 1:10-11. Why would *deputies* need to give "medical care" when medical professionals from two agencies (Alpine and Viejas) were present? (Complaint ¶ 38.)

(5) The "scene . . . quickly became a scene of chaos and disorder 'under the direction and control of the Sheriff's Department . . . .'" Opposition 6:25-27. What was the "chaos and disorder" and how did it yield a Fourth Amendment violation?

A recent Ninth Circuit case highlights the difference between affirmative official conduct that *creates* a danger or *makes* it worse, versus affirmative official conduct that *allows* a danger to exist or get worse. The case is *Johnson v. City of Seattle,* 474 F.3d 634, 641 (9th Cir. 2007):

> The decision to switch from a more aggressive operation plan to a more passive one was not affirmative conduct that placed the . . . Plaintiffs in danger, because it did not place them in any worse position than they would have been in had the police not come up with any operational plan whatsoever.

Applying that principle to this case, plaintiffs cannot allege any facts by which officials *created* the mortal wound, or *made it worse.*

As to plaintiffs Jim and Kay Maxwell's standing, defendants agree that the Maxwells would have standing to assert personal Fourth Amendment death-based claims, *if* they had any. As it happens, *no* plaintiff has a Fourth Amendment death-based claim, so the Maxwell's standing is essentially beside the point. The first cause of action alleges that the in-laws were deprived of "familial relationships in violation of the Fourth


Amendment" because of Kristin Maxwell-Bruce's death. (Complaint ¶ 41.) That is a problematic allegation under *Smith v. City of Fontana*, 818 F.3d 1411 (9th Cir.), *cert. denied*, 484 U.S. 935 (1987), in which the court noted that the Supreme Court has yet to address whether and when the government's act of taking the life of one family member deprives other family members of a cognizable liberty interest in continued association with the decedent. *Id.* at 1418. The court acknowledged that Supreme Court cases defining the liberty interest in a parent-child relationship involved suits by parents of *minor* children, where State action threatened not only the parents' interest in the companionship of their children, but also the parents' constitutionally protected interest in *raising* their children. *Id.* at 1420. In this case, the "child" was Kristin Maxwell-Bruce, a middle-aged adult, married, raising children of her own. It is an open question in the Supreme Court whether parents of such a victim can assert a Fourth Amendment claim for loss of their familial relationship. At this juncture, defendant merely preserves its rights and objections. The main issue is that no plaintiff can state a Fourth Amendment violation for the wife's death, regardless of the in-laws' standing.

    2. Second Cause Of Action.

 The Second Cause of Action is by all plaintiffs against the County of San Diego for "failure of the San Diego Sheriff's Department to implement safe and reasonable hiring policies and practices [that] amounts to deliberate indifference . . . ." (Complaint, ¶ 49.) The allegations of the Second Cause of Action all involve wrongfully hiring "a Sheriff's Deputy, such as Defendant Bruce" and giving him a "firearm." (Complaint, ¶¶ 45-47.) This cause of action is squarely precluded by *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397 (1997), finding no causation under much-worse facts. The Opposition fails to discuss or even acknowledge the *Brown* case, even though *all* of the "General Allegations" in plaintiffs' Complaint allege *precisely* the hiring-policy type of liability for hiring Mr. Bruce as was precluded by the *Brown* case. (Complaint ¶¶ 17-30.)

///

Gun allegations are tied to hiring liability, so they fail under *Brown* for all the same reasons. The case of *Venegas v. County of Los Angeles*, 32 Cal.4th 820 (2004), was cited to show that hiring-policy liability could not be re-cast as a policy of providing guns to Sheriff's deputies who execute and enforce criminal law. The Opposition seemingly missed that point, arguing that under *Venegas*, County liability can be based on *"political, administrative and fiscal capacities,"* because the California Supreme Court did not expressly disapprove *Streit v. County of Los Angeles,* 236 F.3d 552, 562 (9th Cir. 2001), which cited those considerations. The *Venegas* case did not expressly disapprove *Streit*, but one must read the overruled *Venegas* opinion of the California Court of Appeal at 105 Cal.App.4th 636 (2002), to see why. It explains, at page 661, that *Streit* dealt with *jail* policies that had already been resolved before the case went up on appeal. As presented to the California Supreme Court, the *Venegas* case offered no live issue implicating the *Streit* holding. As to *"political, administrative and fiscal capacities,"* the same *"political, administrative and fiscal"* issues would arise for either jail deputies or street deputies, so there is no reason to speculate that the California Supreme Court would approve the *Streit* rationale.

    3.  Third Cause Of Action.

The Third Cause of Action, by the in-laws as personal representatives for the children, is against all defendants, and alleges the wife's wrongful death. (Complaint ¶ 53.) The Opposition argues it is not based on hiring Mr. Bruce or providing him with a weapon, but is based on allegations that deputies "locked down the scene and refused to let Kristin be taken to the hospital," "allowed Kristin to suffocate on her own blood," and "performing emergency medical services in a grossly negligent manner." (Opposition 16:12-16.) The Opposition argues that direct County liability is based on California Health & Safety Code Section 1799.107, gross negligence in the provision of emergency medical care, citing *Eastburn v. Regional Fire Protection Authority,* 31 Cal.4th 1175 (2003). (Opposition 16:23-25.)

///

Plaintiffs seriously misunderstand *Eastburn*. First, the *Eastburn* case never got past demurrer, despite the same offer to prove gross negligence that the present plaintiffs are making. *Eastburn v. Regional Fire Protection Authority,* 31 Cal.4th at 1185-86. Second, *Eastburn* did *not* hold that California Health & Safety Code Section 1799.107 (actually an immunity statute) is the source of direct public entity liability for gross negligence in providing emergency medical care -- it rejected such an argument. *Id.* at 1179, 1181. Third, *Eastburn* found no basis for duty or liability because there was (a) no statutorily-created duty, and (b) no special relationship, between emergency providers and a victim. *Id.* at 1184-85.

Aside from *Eastburn,* the opposition argues that "special relationship" liability arises from "a situation of dependency resulting in detrimental reliance . . . there may be a duty to refrain from conduct which prevents others from giving assistance," citing *Clemente v. State of California*, 40 Cal.3d 202 (1985). (*Clemente II.)* (Opposition 17:12-15.) However, the California Supreme Court had already disapproved *Clemente v. State of California*, 101 Cal.App.3d 374 (1980) (*Clemente I)* to the extent that it held a special relationship may arise *solely* from the fact of dependency. *Williams v. State of California,* 34 Cal.3d. 18, 26-28, fn. 9. *Clemente II* relied largely on a law-of-the-case analysis to salvage the results of a trial that occurred after *Clemente I* was decided, but before it was disapproved in *Williams. Clemente v. State of California*, 40 Cal.3d at 212.

Regarding the potential "duty to refrain from conduct which prevents others from giving assistance," plaintiffs cite no case where California courts have recognized such a duty in the context of official responses to serious medical emergencies. In this case, plaintiffs' own allegations estop them from asserting that theory, because the Complaint affirmatively alleges that all defendants -- including Alpine and Viejas -- acted as each other's authorized agents, employees, servants and representatives. (Complaint ¶ 12.) Plaintiffs would be contending, in effect, that defendants affirmatively prevented *themselves* from acting.

///

California special relationship liability is narrow, only arising in unusual cases. *Adams v. City of Fremont*, 68 Cal.App.4th 243, 279 (1998); *M.B. v. City of San Diego*, 233 Cal.App.3d 699, 704–705 (1991). The rule is not triggered "simply because police officers responded to a call for assistance and took some action at the scene." *Adams*, 68 Cal.App.4th at 279; see *Von Batsch v. American Dist. Telegraph Co.*, 175 Cal.App.3d 1111, 1122–1123 (1985). It is not enough to assert that the law enforcement officers took control of a situation. *Adams*, 68 Cal.App.4th at 280. Courts usually find no duty and reject claims of negligence against law enforcement officers. See, e.g., *Adams*, 68 Cal.App.4th at 288; *M.B. v. City of San Diego,* 233 Cal.App.3d at 704–706; *Lopez v. City of San Diego*, 190 Cal.App.3d 678, 682 (1987); *Von Batsch*, 175 Cal.App.3d at 1124–1125; *Jackson v. Clements*, 146 Cal.App.3d 983, 988–989 (1983); *Shelton v. City of Westminster*, 138 Cal.App.3d 610, 621–622 (1982).

4. Fourth Cause Of Action.

The Fourth Cause of Action is by in-law Jim Maxwell as the wife's estate executor against all defendants, and alleges the wife died as the result of acts or omissions attributable to the County. (Complaint ¶ 56.) The Opposition apparently agrees that this count stands or falls for the same reasons already discussed, because no separate argument is offered.

5. Eighth And Ninth Causes Of Action.

The Eighth and Ninth Causes of Action are for intentional and negligent infliction of emotional distress, respectively, by all plaintiffs against all defendants. The County cannot identify events or circumstances sufficient to formulate a meaningful answer. For example, the Complaint alleges that: "Defendants' incompetence or arrogance even caused the news media to believe Jim was a 'suspect'" (Complaint ¶ 37.) The Opposition suggests that "the County could admit that its incompetence caused the news media to believe Jim was a suspect, but deny or aver lack of information concerning arrogance." (Opposition 22:20-22.) Perhaps counsel intends to be witty. Under the First Amendment, the "news media" believes whatever it pleases. Plaintiffs do not allege that

1  anyone told a reporter that Jim Maxwell was a suspect, or that any such report was
2  printed or broadcast, so how can the County respond to an allegation that its
3  "incompetence or arrogance" caused the "news media" to "believe" something?

## IV

## LEAVE TO AMEND

Finally, the Opposition asks for leave to amend the Complaint to state *Monell* liability "based on adequate training." Plaintiffs miss the point of such a theory. It would be contingent on an underlying constitutional deprivation. Plaintiffs have not alleged a Fourth Amendment deprivation causing the wife's death, so it is "quite beside the point" that an official policy may have caused officials to act as they did in connection with her death. *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986). Plaintiffs have not proposed to allege facts that could add up to a constitutional deprivation causing the wife's death, so there is no basis on which to amend "based on adequate training."

## V

## CONCLUSION

The conflict of interest issue is unresolved. In responding to this motion, plaintiffs have chosen to put the interests of the in-laws ahead of the interests of the children. Beyond that, the Complaint's allegations are so conclusory that, by changing names and so forth, they could be made in any case in which a mortally-wounded victim died after emergency responders arrived. For all the reasons stated in the moving papers, this motion should be granted.

DATED: February 12, 2008         Respectfully submitted,

JOHN J. SANSONE, County Counsel

By: s/ MORRIS G. HILL, Senior Deputy
Attorneys for Defendant County of San Diego
E-mail: morris.hill@sdcounty.ca.gov

Declaration of Service

I, the undersigned, declare:

That I am over the age of eighteen years and not a party to the case; I am employed in, or am a resident of, the County of San Diego, California where the service occurred; and my business address is: 1600 Pacific Highway, Room 355, San Diego, California.

On February 12, 2008, I served the following documents: **Reply emorandum Of Points And Authorities In Support Of Motion To Dismiss First, Second, Third And Fourth Causes Of Action Of Plaintiffs' Complaint And Certain Claims In The Eighth And Ninth Causes Of Action, And For A More Definite Statement As To Other Claims In The Eighth And Ninth Causes Of Action** in the following manner:

☐ By personally delivering copies to the person served.

☐ By placing a copy in a separate envelope, with postage fully prepaid, for each addressee named below and depositing each in the U. S. Mail at San Diego, California.

☒ By electronic filing, I served each of the above referenced documents by E-filing, in accordance with the rules governing the electronic filing of documents in the United States District Court for the Southern District of California, as to the following parties:

Charles G. La Bella, Esq.
Steven T. Coopersmith, Esq.
La Bella & McNamara, LLP
401 West "A" Street, #1150
San Diego, California 92101
(619) 696-9200
(619) 696-9269 (fax)
charleslabella@labellamcnamara.com
scoopersmith@labellamcnamara.com
(Attorneys for Plaintiffs)

Todd D. Thibodo, Esq.
Law Office of Todd D. Thibodo
16133 Ventura Boulevard, #580
Encino, California 91436
(818) 907-5769
(818) 907-5793 (fax)
E-mail: toddthibodo@charter.net
(Attorneys for Plaintiffs)

(Jim Maxwell, et al. v. County of San Diego, et al.; USDC No. 07-cv-2385-JAH(WMc))

| | |
|---|---|
| Kevin Osterberg, Esq.<br>Stephen Michael Caine, Esq.<br>Haight Brown and Bonesteel<br>6080 Center Drive, # 800<br>Los Angeles, California 90045-1574<br>(310) 215-7728<br>(310) 215-7300 (fax)<br>E-mail: caines@hbblaw.com<br>(Attorneys for Defendant Alpine Fire Protection District) | Philip Samouris, Esq.<br>Higgs, Fletcher & Mack LLP<br>401 West "A" Street, #2600<br>San Diego, California 92101-7910<br>(619) 236-1551<br>(619) 696-1410 (fax)<br>E-mail: samouris@higgslaw.com<br>(Attorneys for Defendant Viejas Fire Department) |

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 12, 2008, at San Diego, California.

By: s/ MORRIS G. HILL
E-mail: morris.hill@sdcounty.ca.gov