
| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIM MAXWELL and KAY MAXWELL, individually and as guardians of TREVER ALLEN BRUCE and KELTEN TANNER BRUCE; and JIM MAXWELL, as executor of the ESTATE OF KRISTIN MARIE MAXWELL-BRUCE,<br><br>Plaintiffs,<br>v.<br>COUNTY OF SAN DIEGO; ALPINE FIRE PROTECTION DISTRICT; VIEJAS FIRE DEPARTMENT; DEPUTY LOWELL; BRYAN "SAM" BRUCE; DOES 1-50.<br><br>Defendants. | Civil No. 07cv2385 JAH(WMc)<br><br>**ORDER (1) GRANTING DEFENDANT VIEJAS FIRE DEPARTMENT'S MOTION TO DISMISS [DOC. # 12]; (2) DENYING DEFENDANT ALPINE FIRE PROTECTION DISTRICT'S MOTION TO DISMISS [DOC. # 3]; AND (3) GRANTING IN PART AND DENYING IN PART DEFENDANT COUNTY OF SAN DIEGO'S MOTION TO DISMISS [DOC. # 5]** |

## INTRODUCTION

Pending before this Court are the motions to dismiss filed by defendant Viejas Fire Department ("Viejas Fire"), defendant Alpine Fire Protection District ("Alpine Fire" or "Alpine") and defendant County of San Diego ("the County"). The motions have each been fully briefed by the parties. After a careful consideration of the pleadings and relevant exhibits submitted by the parties, and for the reasons set forth below, this Court GRANTS Viejas Fire's motion; DENIES Alpine Fire's motion; and GRANTS IN PART and DENIES IN PART the County's motion.

# BACKGROUND

## 1. Factual Background

The instant complaint stems from the shooting and subsequent death of Kristin Marie Maxwell-Bruce ("the decedent") by her husband, Sheriff's deputy Lowell Bryan "Sam" Bruce ("Bruce") on December 14, 2006, at the family home shared by Bruce and the decedent, their children Trever Allen Bruce and Kelten Tanner Bruce ("the children"), and the decedent's parents, Jim and Kay Maxwell ("the Maxwells, ""the grandparents" or "plaintiffs"), who are the owners of the home. Compl. ¶¶ 1, 31. The complaint alleges that, although the decedent was shot in the jaw, she was able to walk to the telephone and dial 911. Id. ¶¶ 3, 32. According to plaintiffs, when the County's sheriff's deputies responded to the 911 call, the scene "quickly became a scene of chaos and disorder under the direction and control of the Sheriff's Department after Sheriff's Deputies learned one of their own was the shooter." Id. ¶ 3. Plaintiffs allege that the scene was then locked down and the decedent was not allowed to be taken to the hospital resulting in the decedent's death at the scene, occurring approximately one hour after the 911 call was made, by "suffocat[ing] and drown[ing] in her own blood." Id.

The complaint alleges plaintiffs were not allowed to see, speak or comfort the decedent, or see, speak or comfort each other during the period of time that elapsed between the 911 call and the decedent's death. Id. ¶ 37. The complaint further alleges that an unknown sheriff's deputy hit Jim Maxwell with a baton and pepper-sprayed him in the face when he tried to reach his wife. Id. ¶¶ 37, 67, 72. The Maxwells claim they did not learn of their daughter's death until after the news media had reported it and aver that the defendants lead the news media to believe Jim Maxwell was a suspect in the shooting. Id. ¶¶ 3, 37, 78, 84. In addition, the complaint alleges the County hired Bruce as a Deputy Sheriff even after he had failed a psychological examination twice, and allowed him to take his "County-issued weapon" home although "he was unfit for duty and prone to violence." Id. ¶ 2, 18, 29.

//

2. **Procedural History**

The instant complaint was filed on December 19, 2007, alleging causes of action against the County pursuant to 42 U.S.C. § 1983, based on deprivation of plaintiffs' rights to familial relationships under the Fourth and Fourteenth Amendments to the United States Constitution (first cause of action) and for negligent hiring practices pursuant to Monell v. New York City Department of Social Services, 436 U.S. 658, 691-94 (1978)("Monell"), along with various state law claims based on allegations of wrongful death, survival action, excessive force, battery, intentional infliction of emotional distress, and negligent infliction of emotional distress. The complaint alleges Viejas Fire and Alpine Fire participated in the events that resulted in the decedent's wrongful death, giving rise to the state law claims against them, with the exception of the claims for excessive force and battery that are directed solely at the County.

Alpine Fire's and the County's motions to dismiss were both filed on January 10, 2008. Viejas Fire's motion was filed on January 24, 2008. Plaintiffs' oppositions to Alpine Fire's and the County's motion were filed on February 5, 2008, and their opposition to Viejas Fire's motion was filed on February 15, 2008. Reply briefs by Alpine Fire and the County were filed on February 12, 2008, and the reply by Viejas Fire was filed on February 25, 2008. After review of the pleadings submitted, this Court took the motions under submission without oral argument. *See* CivLR 7.1(d.1); Docs. # 17, 20.

**DISCUSSION**

Viejas Fire and Alpine Fire each move to dismiss the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. Viejas Fire moves on the grounds that the doctrine of tribal sovereign immunity bars plaintiffs' suit against it. Alpine Fire separately moves on the grounds that supplemental jurisdiction over the state law claims should not be exercised because the state law claims do not arise from the same common nucleus of operative facts as those alleged for the federal claims. The County moves to dismiss the first, second, third and fourth causes of action, and certain claims alleged in the eighth and ninth causes of action

for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The County also moves for a more definite statement, pursuant to Rule 12(e) of the Federal Rules of Civil Procedure as to other claims presented in the eighth and ninth causes of action.

**1.    Legal Standards**

    **a.    Subject Matter Jurisdiction [Fed.R.Civ.P. 12(b)(1)]**

        **i.    In General**

"A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact." Thornhill Publishing Co. v. General Tel & Elect., 594 F.2d 730, 733 (9th Cir. 1979); *see also* Fed. R. Civ. P. 12(b)(1). "Unlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in doing so rely on affidavits or any other evidence properly before the court." St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989). Thus, the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Id.

Where the defendant brings the motion as a "speaking motion" presenting a factual challenge to subject matter jurisdiction, the Court may consider extrinsic evidence on whether jurisdiction exists and may resolve factual disputes if necessary. Thornhill, 594 F.2d at 733. Because the plaintiff bears the burden of establishing subject matter jurisdiction, no presumption of truthfulness attaches to the allegations of plaintiff's complaint and the Court must presume it lacks jurisdiction until plaintiff establishes jurisdiction. Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).

        **ii.    Tribal Sovereign Immunity**

"Suits against Indian tribes are ... barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation." Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe, 498 U.S. 505, 509 (1991); Snow v. Quinault Indian Nation,

709 F.2d 1319, 1321 (9th Cir.1983). Tribal sovereign immunity deprives a court of subject matter jurisdiction. *See* Pit River Home & Ag. Coop. Ass'n v. United States, 30 F.3d 1088, 1102-03 (9th Cir.1994); Pan Am. Co. v. Sycuan Band of Mission Indians, 884 F.2d 416, 418 (9th Cir.1989). "There is a strong presumption against waiver of tribal sovereign immunity." Demontiney v. U.S. *ex rel*. Dept. of Interior, Bureau of Indian Affairs, 255 F.3d 801, 811 (9th Cir. 2001). Waiver of sovereign immunity by a tribe must be unequivocally expressed and may not be implied. Kescoli v. Babbitt, 101 F.3d 1304, 1310 (9th Cir.1996); Quileute Indian Tribe v. Babbitt, 18 F.3d 1456, 1459 (9th Cir.1994); McClendon v. United States, 885 F.2d 627, 629 (9th Cir.1989); Snow, 709 F.2d at 1321. Similarly, congressional abrogation of sovereign immunity may not be implied and must be "unequivocally expressed" in "explicit legislation." Krystal Energy Co. v. Navajo Nation, 357 F.3d 1055, 1056 (9th Cir.2003); Demontiney, 255 F.3d at 811. Plaintiffs bear the burden of demonstrating there was an express and unequivocal waiver of tribal sovereign immunity. *See* Baker v. United States, 817 F.2d 560, 562 (9th Cir.1987); Breakthrough Mgmt. Group, Inc. v. Chukchansi Gold Casino & Resort, 2007 WL 2701995 *2 (D.Colo.2007). Absent an express and unequivocal waiver of immunity by the tribe or abrogation of tribal immunity by Congress, tribes cannot be sued. Stock West Corp. v. Lujan, 982 F.2d 1389, 1398 (9th Cir.1993).

Tribal sovereign immunity applies in both federal and state courts. *See* Santa Clara Pueblo v. Martinez, 436 U.S. 49, 68 (1978); Puyallup Tribe, Inc. v. Department of Game of Washington, 433 U.S. 165, 171-73 (1977); Snow, 709 F.2d at 1321; United States v. Oregon, 657 F.2d 1009, 1012-13 (9th Cir.1981). "The immunity ... extends to suits for declaratory and injunctive relief," and "is not defeated by an allegation that [the tribe] acted beyond its powers." Imperial Granite Co. v. Pala Band of Mission Indians, 940 F.2d 1269, 1271 (9th Cir.1991). Tribal sovereign immunity is not dependent on a distinction between on-reservation and off-reservation conduct nor upon a distinction between the governmental and commercial activities of a tribe.. Kiowa Tribe v. Manufacturing Techs., 523 U.S. 751, 754-55, 759-60 (1998); Allen v. Gold Country Casino, 464 F.3d 1044,

1046 (9th Cir.2006); American Vantage Cos. v. Table Mt. Rancheria, 292 F.3d 1091, 1100 (9th Cir.2002); Bassett v. Mashantucket Pequot Tribe, 204 F.3d 343, 357 (2d Cir.2000). A tribe's sovereign immunity extends both to tribal governing bodies and to tribal agencies which act as an arm of the tribe. *See* Allen, 464 F.3d at 1046; *see also* Marceau v. Blackfeet Hous. Auth., 455 F.3d 974, 978 (9th Cir.2006); Pink v. Modoc Indian Health Project, 157 F.3d 1185, 1188 (9th Cir.1998). Thus, it is irrelevant whether the particular tribal entity is conducting business activities because the appropriate question is whether the particular "entity acts as an arm of the tribe so that the entity's activities are properly deemed to be those of the tribe." Allen, 464 F.3d at 1046.

### iii. Supplemental Jurisdiction

Under 28 U.S.C. § 1367, a district court may exercise supplemental jurisdiction over state law claims that "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The "[s]ame case or controversy" is defined as multiple claims that arise from "a common nucleus of operative facts" that a plaintiff "would ordinarily be expected to try ... all in a single judicial proceeding." United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966). However, 28 U.S.C. § 1367(c)(2) explicitly allows a reviewing court to decline to exercise supplemental jurisdiction if:

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. §§ 1367(c)(1)-(4). Thus, it is well within a court's discretion to exercise, or decline to exercise supplemental jurisdiction over state law claims. Gibbs, 383 U.S. at 726; Schneider v. TRW, Inc., 930 F.2d 986, 994 (9th Cir. 1991). When deciding whether to exercise supplemental jurisdiction, a court should consider judicial economy, convenience, fairness and comity. Gibbs, 383 U.S. at 726.

//

### b. Failure to State a Claim [Fed.R.Civ.P. 12(b)(6)]

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984); *see* Neitzke v. Williams, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. Robertson, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," he must plead sufficient facts that, if true, "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007).

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. Ileto v. Glock, Inc., 349 F.3d 1191, 1200 (9th Cir. 2003); Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). When ruling on a motion to dismiss, the Court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the Court takes judicial notice. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). If a court determines that a complaint fails to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts. *See* Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).

//
//
//

1       **c.**     **More Definite Statement [Fed.R.Civ.P. 12(e)]**

"If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed.R.Civ.P. 12(e). Rule 12(e) motions are appropriate only under limited circumstances. *See* 5C Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE (Civ. 3d § 1376 (2004). However, when addressing a Rule 12(e) motion, "the judge may in his discretion ... require such detail as may be appropriate in the particular case." McHenry v. Renne, 84 F.3d 1172, 1179 (9th Cir. 1996).

**2.**     **Analysis**

      **a.**     **Viejas Fire's Motion**

Viejas Fire moves to dismiss the instant complaint for lack of subject matter jurisdiction based on the doctrine of tribal sovereign immunity. Viejas Fire explains that it is an entity of the Viejas Band of Kumeyaay Indians ("the Viejas Band" or "the Band"), a federally recognized Indian tribe.[1] Doc. # 12-2 at 1. Viejas Fire further explains that it was established in October 2006 to assist the Viejas Band by providing fire protection and emergency medical services to the Band's 1,600 acre reservation and its surrounding communities upon request. Doc. # 12-2 at 1, 3-4; Barrett Decl. ¶ 4. Viejas Fire points out that it is "wholly funded by the Band" and "is not incorporated or otherwise organized under the laws of any state." Id. at 4. As such, Viejas Fire contends it is immune from suit absent waiver of its sovereign immunity or abrogation by Congress of the Viejas Band's immunity. Id. at 6. Viejas Fire argues that no waiver or abrogation has occurred to overcome its sovereign immunity from suit. Id.

In opposition, plaintiffs do not dispute that the Viejas Band is a federally recognized Indian tribe subject to sovereign immunity. However, plaintiffs claim that

---

[1] In support, Viejas seeks judicial notice of the Federal Register listing of federally recognized tribes compiled by the Bureau of Indian Affairs which includes the Viejas Band in its inventory. Doc. # 12-2 at 5; Doc. # 12-3, Exh. A. This Court deems it appropriate to take judicial notice of the Federal Register listing as evidence demonstrating that the Viejas Band is a federally recognized Indian tribe.

Viejas Fire entered into a "mutual aid agreement" with defendant Alpine Fire pursuant to California Health and Safety Code § 13863,[2] which plaintiff argues constitutes an unequivocal waiver of its sovereign immunity. Doc. # 18 at 3, 5-6 (citing C & L Enterprises v. Citizen Band of Potawatomi Indian Tribe of Oklahoma, 532 U.S. 411, 423 (2001)(where Indian tribe entered into a contract with a choice of law clause, the tribe waived its sovereign immunity); Smith v. Hopland Band of Pomo Indians, 95 Cal.App.4th 1 (2002)(same)).

Viejas Fire points out, in reply, that plaintiffs' allegations regarding the mutual aid agreement lack any factual support and, thus, must be rejected. Doc. # 19 at 2. Viejas Fire contends that "[p]laintiffs cannot simply rely on the allegations raised in their Complaint" to defeat a motion to dismiss for lack of subject matter jurisdiction. Id. Instead, Viejas Fire contends that plaintiffs must "furnish affidavits or other evidence necessary to satisfy [their] burden of establishing subject matter jurisdiction." Id. (citing Savage v. Glendale Union High School, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)). Viejas Fire claims plaintiffs have failed to meet their burden. Id.

This Court agrees with Viejas Fire. Plaintiffs merely allege, in their complaint and in their pleadings, that there exists a mutual aid agreement between Alpine Fire and Viejas Fire. *See* Compl. ¶¶ 59, 60; Doc. # 18 at 4-5. Plaintiffs provide no evidence to support their allegations concerning the existence of a mutual aid agreement and Viejas Fire disputes that such an agreement exists. *See* Doc. # 19 at 2, 4. Without proof of a mutual aid agreement, plaintiffs cannot meet their burden of demonstrating subject matter jurisdiction exists. Stock West, 873 F.2d at 1225. This Court, therefore, finds that Viejas Fire is entitled to tribal sovereign immunity as an entity of the Viejas Band and no waiver of immunity or abrogation by Congress has been demonstrated to have occurred

---

[2] Section 13863(a) provides that: "[a] district may enter into mutual aid agreements with any ... federally recognized Indian Tribe." Section 13863(b) provides that an "Indian tribe ... shall have the same immunity from liability for civil damages on account of personal injury to or death of any person ... resulting from acts or omissions of its fire department personnel in the performance of the provisions of the mutual aid agreement as is provided by law for the district . . . except when the act or omission occurs on property under the control of the . . . federally recognized Indian tribe."

to overcome that litigation bar.³  Accordingly, Viejas Fire's motion to dismiss for lack of subject matter jurisdiction based on tribal sovereign immunity is GRANTED and Viejas Fire is DISMISSED as a defendant in this case.

      **b.**    **Alpine Fire's Motion**

Alpine Fire moves to dismiss the complaint against it on the grounds that supplemental jurisdiction over the state law claims should not be exercised because there is no common nucleus of operative facts connecting the federal claims with the state claims alleged. *See* Doc. # 3. Alpine Fire claims that the "nucleus of facts comprising the excessive force/assault claims against the County," which are the only federal claims alleged, "are utterly unrelated to, and independent of, the nucleus of facts comprising the claims of grossly negligent emergency care rendered by the paramedics/EMTs from Alpine ..." Doc. # 3-2 at 5. According to Alpine Fire, "[t]he only relationship between the two claims is that one followed the other in time." Id. at 7. Alpine Fire claims that "[t]he key facts do not overlap ... for any purpose beyond providing background." Id.

Plaintiffs contend, in opposition, the complaint "clearly allege[s] that the majority of the constitutional violations alleged against the County occurred at the same time as Alpine's gross negligence, and were inextricably connected with Alpine's ... actions." Doc. # 14 at 5. Plaintiffs point out that the complaint alleges the County and Alpine each had respective roles in the alleged refusal to transport the decedent to the hospital resulting in the decedent's "asphyxiation on her own blood." Id. Plaintiffs note that both the County and Alpine were at the scene acting at the same time and their "combined actions [are alleged to have] caused [the decedent's] death." Id. (citing Compl. ¶¶ 3, 53, 54, 56, 57). Thus, plaintiffs contend that "[i]t is not possible to neatly separate Alpine's actions from the County's." Id. In addition, plaintiffs claim that judicial economy, convenience and fairness weigh in favor of adjudicating the claims against the County and Alpine in one

---

³ Because this Court finds plaintiffs have failed to meet their burden of demonstrating subject matter jurisdiction exists by failing to prove the existence of a mutual aid agreement that might constitute a waiver of tribal sovereign immunity under California law, this Court does not address whether such an agreement constitutes a waiver in this case or Viejas Fire's alternative arguments concerning whether it is proper for this Court to assume supplemental jurisdiction over the claims against Viejas Fire.

single trial. Id. at 6-7.

In reply, Alpine Fire argues that the claims can, in fact, be separately easily because "the claims and law applicable to the Sheriffs are clearly different from the claims and law relevant to the paramedics." Doc. # 16 at 2. Alpine Fire points out that there are simple remedies that can be applied to ensure no duplication of effort or conflicting rulings will occur if the claims against the County and Alpine are tried separately. Id. at 2-3.

This Court disagrees with Alpine. This Court is unconvinced that the claims arising out the actions of both the County and Alpine during the time period between the shooting and the decedent's death are not intertwined. The complaint clearly alleges that both the County's and Alpine's actions contributed to the injuries suffered by plaintiffs. *See* Compl. ¶¶ 3, 53, 54, 56, 57. There does not appear to be any dispute that the County and Alpine's actions that spawned the instant lawsuit arise from the same set of facts. Thus, this Court finds that the claims against both the County and Alpine arise out of a common nucleus of operative facts. This Court also finds that the notions of judicial economy, convenience, fairness and comity dictate that the claims against the County and Alpine be adjudicated in one single judicial proceeding.[4] Gibbs, 383 U.S. at 725. Therefore, Alpine's motion to dismiss for lack of subject matter jurisdiction is DENIED.

### c. The County's Motion

The County moves to dismiss plaintiffs' first second, third and fourth causes of action and certain claims contained in plaintiffs' eighth and ninth causes of action for failure to state a claim upon which relief may be granted. Specifically, the County seeks dismissal on the grounds that (1) the Maxwells lack standing to sue on their own behalf for wrongful death under Section 1983; (2) the County cannot be held liable (a) because Bruce did not act under color of state law; (b) because it cannot be held accountable for negligently hiring and providing a gun to a person with psychological problems under

---

[4] This Court notes Alpine has indicated that, if the instant motion is denied, it may, at some later date, seek to bifurcate the trial so the claims against it could be tried separately from the claims against the County. *See* Doc. # 3-2 at 2. This ruling in no way precludes Alpine from seeking such a bifurcation at a later time.

either federal or state law; and (c) it cannot be held accountable under a danger-creation or special relationship theory based on federal or state law. In addition, the County seeks a more definite statement on plaintiffs' claims for intentional and negligent infliction of emotional distress.[5]

### 1. Standing

The County contends that the Maxwells "have no claim in their own rights under the first cause of action" based on deprivation of the Maxwells' right to familial relationship with the decedent under the Fourth and Fourteenth Amendments to the United States Constitution. Doc. # 5-2 at 22 (citing Smith v. City of Fontana, 818 F.3d 1411 (9th Cir. 1987); Estate of Johnson v. Village of Libertyville, 819 F.3d 174 (7th Cir. 1987)); *see* Compl. ¶ 41. Plaintiffs point out, in opposition, that the Maxwells' standing is based on an alleged deprivation of their own familial relationship with the decedent, a claim plaintiffs argue can be properly asserted here. Doc. # 13 at 5-6 (citing Doty v. Carey, 626 F.Supp. 359 (N.D.Ill. 1986)(allowing parents to bring Section 1983 claim on their own behalf despite not being proper plaintiffs under Illinois' wrongful death statute); Penilla v. City of Huntington Park, 115 F.3d 707, 711 (9th Cir. 1997)(parent could pursue Fourteenth Amendment claim in her own right based on deprivation of familial relationship with son); Munger v. City of Glasgow, 227 F.3d 1082 (9th Cir. 2000)(parents sued individually and on behalf of decedent son's estate for constitutional

---

[5] The County also presents a lengthy discussion concerning an alleged "incurable conflict of interest" that the County claims exists between the grandparents and the children plaintiffs, suggesting that the children could, based on the facts alleged in the complaint, sue their grandparents under similar theories to those alleged against the County. *See* Doc. # 5-2 at 11-14. The County contends the conflict exists on both a personal representative level, since the grandparents personally represent the interests of the children and the decedent's estate, as well as on a legal representation level, in that plaintiffs' counsel represent all parties with conflicting interests. Id. at 13. The County worries "that issues already raised in the complaint will not be thoroughly litigated against all parties while the conflict exists" and, thus, requests the Court "exercise its inherent power to protect vulnerable parties who cannot safeguard their own rights." Id. at 14. Plaintiffs contend in opposition, that the conflicts defendants point to are not actual conflicts but, instead, are merely potential conflicts which are, nevertheless, "patently frivolous." Doc. # 13 at 20. Plaintiffs point out that the cases cited by defendants involved actual conflicts, not potential ones. Id. at 21. This Court, however, notes that defendants do not expressly seek dismissal based on this alleged "incurable conflict," simply suggesting this Court "exercise its inherent power to protect" the children plaintiffs from possible harm. Doc. # 5-2 at 14; Doc. # 15 at 3. This Court finds the instant motion is not the proper avenue to seek such relief. Therefore, this Court deems it inappropriate to address this issue here.

violations against county sheriff's department and police department)).

The County, in reply, concedes that the Maxwells have standing to assert their own personal Fourth Amendment "death-based claims," if they have any such claims, but notes that "it is problematic" because the Supreme Court has left open the question of whether parents of a middle-aged adult child who is married with children can assert a Fourth Amendment claim for loss of their familial relationship. Doc. # 15 at 5-6. Thus, the County states that "[a]t this juncture, [it] merely preserves its rights and objections" regarding the standing issue. Id. at 6. This Court construes the County's representations as withdrawing this contention but preserving its rights and objections to readdress its concerns, if necessary, at some later date. Accordingly, the County's motion to dismiss the Maxwells' first cause of action based on lack of standing is WITHDRAWN.

### 2.     **The County's Liability**

The County next moves to dismiss plaintiffs' Section 1983 claims on the grounds that (a) the County cannot be held liable because Bruce was not acting under color of state law; (b) the County cannot be held liable for negligently hiring or providing Bruce with a gun; and (c) the County cannot be held liable under a danger-creation or special relationship theory.

#### a.     **Acting under Color of State Law**

42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983. The County argues that it cannot be held liable for Bruce's actions because Bruce was not acting under color of state law at the time of the shooting. Doc. # 5-2 at 14.

In opposition, plaintiffs point out that the County "simply ignore[s] the acts of County employees, other than Bruce, who are alleged to have caused [the decedent's]

death." Doc. # 13 at 6. Plaintiffs point out that the complaint specifically alleges "after [the decedent] called 911 for help, the San Diego Sheriff's Department responded, but the scene of the shooting quickly became a scene of chaos and disorder 'under the direction and control of the Sheriff's Department ...'" Id. (quoting Compl. ¶ 3)(emphasis omitted). Plaintiffs further point out that the complaint alleges "sheriff's deputies, acting under color of state law and within the scope of their employment, caused [the decedent's] death by locking down the scene of the shooting, by seizing [the decedent] and taking custody of her, by refusing to allow [her] to be taken to the hospital, by refusing to allow [the Maxwells] to attend to [her], by performing emergency medical services in a grossly negligent manner and by deliberate indifference to her obvious medical needs." Id. at 7 (citing Compl. ¶¶ 3, 4, 35, 36, 37, 38, 41). The County notes, in reply, that plaintiffs' complaint contains no allegations concerning the decedent being taken into custody or seized but, instead, alleges only that the Maxwells "were 'unlawfully detained and falsely imprisoned' and 'restrained.'" Doc. # 15 at 4 (citing Compl. ¶ 37)(emphasis omitted).

The complaint alleges, in pertinent part, as follows:

> Sheriff's Deputies locked down the scene of the shooting and refused to let [the decedent] be taken to the hospital . . . During the last hour of [the decedent's] life, Defendants refused to let her parents see her [and] refused to let them speak to her or comfort her . . . Sheriff's Department employees . . . – all acting within the course and scope of their employment as emergency medical services providers – caused [the decedent's] death by performing medical services, including but not limited to first aid, medical treatment, rescue procedures, transportation, and other necessary and related activities in a grossly negligent manner.

Compl. ¶¶ 36-37. These allegations, in this Court's view, clearly state a claim for injury caused by the County by County employees acting under color of state law. Therefore, this Court finds that, although it is clear that Bruce was not acting under color of state law, other County employees were clearly so acting. Accordingly, the County's motion to dismiss is GRANTED as to the County's liability based on Bruce's actions but DENIED insofar as it seeks dismissal based on the actions of other County employees.

//

//

### b. Negligent Hiring and Providing a Gun

The County also contends that it cannot be held liable under Section 1983 for negligently hiring and providing a gun to Bruce[6] even if the County knew of his psychological problems. Doc. # 5-2 at 14. According to the County, the instant case is analogous to the case of <u>Board of County Commissioners of Bryan County v. Brown</u>, 520 U.S. 397 (1997), in which the Supreme Court determined that, for the County to be held liable under Section 1983 for negligently hiring Bruce and providing him with a gun, plaintiffs must demonstrate that the shooting was "'a plainly obvious consequence of the hiring decision.'" <u>Id.</u> at 16 (quoting <u>Brown</u>, 520 U.S. at 412). The County points out that the complaint "affirmatively alleges in great detail that Mr. Bruce already had psychological issues before the County hired him" and argues that "[h]e would have had the same issues whether or not the County hired him." <u>Id.</u> Thus, the County contends there is no direct link between the alleged deficiencies, that is, the County's screening process for hiring purposes, and the alleged constitutional violation, in this case, the shooting and death of the decedent. *See* <u>id.</u>

In opposition, plaintiffs point out that their claims are not predicated solely on the negligent hiring of Bruce or providing him with a weapon but, instead, include allegations of gross negligence which subject the County to vicarious liability for the actions of its employees acting within the scope of their employment.[7] Doc. # 13 at 16. However, as the County notes in reply, plaintiffs fail to address the <u>Brown</u> decision and its impact on plaintiffs' claims.[8] *See* Doc. # 15 at 6. The County contends plaintiffs' allegations in the second cause of action, as well as the general factual allegations concerning the County's

---

[6] In the second cause of action, plaintiffs seek to hold the County liable for its "reckless hiring policies and practices" that resulted in the hiring of Bruce as a deputy and providing him with a gun based on <u>Monell</u> liability. *See* Compl. ¶¶ 45-47; Doc. # 13 at 14.

[7] These allegations are found in plaintiffs' third and fourth causes of action. *See* Compl. ¶¶ 53-54, 56-57.

[8] Plaintiffs' only argument in response to the County's contentions regarding supervisory liability center on whether the County was acting on behalf of the state or the county during the incident at issue. *See* Doc. # 13 at 14-15. However, this Court's reading of the pleadings reflects that this issue was not presented by the County in its motion. Therefore, this Court does not address it.

1  hiring of Bruce and providing him with a gun, center on the "hiring-policy type of liability"
2  that was precluded in Brown. Id. (citing Compl. ¶¶ 17-30, 45-47, 49).

3      Based on a careful review of the case authority cited, this Court finds plaintiffs'
4  claims that the County negligently hired Bruce and provided him with a gun are
5  insufficient to state a Section 1983 claim under Monell, 436 U.S. at 691-94. *See* Brown,
6  520 U.S. at 412. There appears to be no dispute that Brown bars plaintiffs from seeking
7  relief based on a negligent hiring theory because causation cannot be established under the
8  facts of this case.[9] Therefore, the County's motion to dismiss plaintiffs' second cause of
9  action and any general allegations concerning negligent hiring and providing Bruce with
10 a gun is GRANTED.

11         **c.**    **Danger-Creation/ Special Relationship Theories**

12     The County next moves to dismiss plaintiffs' claims for wrongful death and survival
13 action under California law, contained in plaintiffs' third and fourth causes of action, on
14 the grounds that the County is not liable under a danger-creation or special relationship
15 theory. Doc. # 5-2 at 19-22 (citing, *inter alia*, Davidson v. City of Westminster, 32 Cal.3d
16 197 (1982); Williams v. State of California, 34 Cal.3d 18 (1983)). In Davidson, the
17 California Supreme Court explained that:

18     As a general rule, one owes no duty to control the conduct of another, nor
    to warn those endangered by such conduct. Such a duty may arise, however,
19     if '(a) a special relation exists between the actor and the third person which
    imposes a duty upon the actor to control the third person's conduct, or (b)
20     a special relation exists between the actor and the other which gives the other
    a right to protection.
21

22 Davidson, 32 Cal.3d at 203 (citations omitted). However, in regards to police officers'
23 liability, the Davidson court found that the "mere proximity" of a person to someone
24 officers know or suspect is a threat does not establish a special relationship imposing a
25 duty on the officers to control that threat. Id. at 205. In Williams, the California

26

---

27     [9] The County also contends that it cannot be held liable under California law on a negligent hiring
   or negligent supervision theory. *See* Doc. # 5-2 at 15-19 (citing de Villers v. County of San Diego, 156
28 Cal.App.4th 238, 244-245 (2007)). However, because plaintiffs concede their "state law causes of action ...
   are not predicated on 'providing a gun' or negligently hiring a killer,'" this Court need not address this issue.

Supreme Court expounded on this rule, explaining that a person, including a law enforcement officer, who does not create the peril has no duty to come to the aid of another may still be held liable if, by aiding another "his failure to exercise such care increases the risk" of harm or "the harm is suffered because of the other's reliance upon the undertaking." Williams, 34 Cal.3d at 23-24. In other words, the County may be held liable under Williams if its employees came to the aid of the decedent but then failed to exercise the proper care or simply failed to act to the decedent's detriment. The County argues that, here, the duty was not triggered here. Doc. # 5-2 at 22.

In opposition, plaintiffs contend that, "[b]y locking down the scene, by refusing to let [the decedent] be taken to the hospital, and by affirmatively undertaking to provide emergency medical services, sheriff's deputies created a 'special relationship' under California [s]tate law and situation of dependency resulting in detrimental reliance." Doc. # 13 at 17. Thus, plaintiffs argue that, under the circumstances here, the County created a "special relationship" that gave rise to a duty of care because sheriff's deputies are alleged to have taken affirmative actions at the scene, noting that "there may be a duty to refrain from conduct which prevents others from giving assistance." Id. at 18-19 (citing Clemente v. State of California, 40 Cal.3d 202 (1985)). Plaintiffs claim the County did just that, "by refusing to allow [the decedent] to be taken to the hospital, and by refusing to allow [the Maxwells] to attend to [the decedent]." Id. at 18.

The County claims, in reply, that the California Supreme Court has disapproved the notion that a special relationship may arise solely from the fact of dependency. *See* Doc. # 15 at 8 (citing Williams, 34 Cal.3d at 26-28 n. 9). The County also claims plaintiffs have cited no authority to support their theory concerning the "potential 'duty to refrain from conduct which prevents others from giving assistance' ... in the context of official responses to serious medical emergencies." Id. The County points out that the special relationship liability under California law is narrow and "is not triggered 'simply because police officers responded to a call for assistance and took some action at the scene.'" Id. at 9 (quoting Adams v. City of Fremont, 68 Cal.App.4th 243, 279 (1998)).

1       In ruling on a motion to dismiss under Rule 12(b)(6), this Court must view the
2  allegations presented in the light most favorable to plaintiffs. Thompson, 295 F.3d at
3  895; Cahill, 80 F.3d at 337-38. Thus, this Court cannot, at this stage of the proceedings,
4  view plaintiffs' allegations as narrowly as the County seeks. Plaintiffs' complaint clearly
5  alleges "Sheriff's Deputies locked down the scene and refused to let [the decedent] be
6  taken to the hospital" and that defendants, including the County's sheriff's deputies,
7  "refused to let [the Maxwells] see, speak or comfort her." Compl. ¶¶ 36, 37. Viewing
8  these allegations in plaintiffs' favor, this Court finds the complaint sufficiently alleges the
9  County's employees took more than just "some action at the scene," Adams, 68
10 Cal.App.4th at 279, thereby triggering a special relationship between the County and the
11 decedent. Therefore, this Court finds the County's arguments fail. Accordingly, the
12 County's motion to dismiss plaintiffs' state law claims contained in the third and fourth
13 causes of action for failure to state a claim under a danger-creation or special relationship
14 theory is DENIED.

### 3.  More Definite Statement

16      Lastly, the County moves for a more definite statement as to plaintiffs' claims
17 presented in the eighth and ninth causes of action for intentional and negligent infliction
18 of emotional distress.[10] See Doc. # 5-2 at 25. The County claims the complaint "lump[s]
19 all other allegations [besides those that allege the decedent's suffering and death and
20 excessive force] together[]" which prevents the County from "determin[ing] which claims
21 are directed at the County ... and [from] identify[ing] events or circumstances from which
22 those claims arise sufficient to formulate a meaningful answer." Id. As examples, the
23 County points to plaintiffs' allegations that "[d]efendants' incompetence or arrogance even
24 caused the news media to believe Jim was a 'suspect'" and "Kristin's young boys were also

---

[10] The County also moves to dismiss those portions of these two causes of action that "seek to hold the County liable for inflicting emotional distress by causing the wife's suffering and death" based on the arguments presented previously for the first through fourth causes of action. Doc. # 5-2 at 24-25. Because this Court denies the County's motion as it relates to all of plaintiffs' allegations in the first through fourth causes of action, with the exception of the allegations concerning negligent hiring which is not addressed in the eighth and ninth causes of action, the County's motion to dismiss portions of plaintiffs' eighth and ninth causes of action on the previously presented bases must be DENIED as well.

mistreated by defendants." Id. (citing Compl. ¶ 37).  Plaintiffs disagree, contending the allegations are clear enough to allow the County to admit or deny the allegations, in that the allegations contain enough information to notify the County of the claims against it. Doc. # 15 at 22.

This Court's review of the complaint reveals that plaintiffs are correct.  Although the complaint is certainly not precise, in that some of the allegations contained in the eighth and ninth causes of action could be attributed to any one of the defendants or all of them, there is no reason for the County not to assume the allegations presented do not apply to it.  As such, the County could admit or deny these imprecise allegations whether or not they are applicable to a different defendant.  This Court finds plaintiffs' complaint is not "so vague or ambiguous that [the County] cannot reasonably be required to frame a responsive pleading," requiring a more definite statement under Rule 12(e). Fed.R.Civ.P. 12(e).  Accordingly, the County's motion for a more definite statement is **DENIED**.[11]

### CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1.  Viejas Fire's motion to dismiss [doc. # 12] is **GRANTED** and Viejas Fire is **DISMISSED** as a defendant in this case;

2.  Alpine Fire's motion to dismiss [doc. # 3] is **DENIED;**

3.  The County's motion to dismiss [doc. # 5] is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a.  The County's motion to dismiss the Maxwell's claims in plaintiffs' first cause of action for lack of standing is **WITHDRAWN**;

---

[11] Plaintiffs, in their opposing brief to the County's motion, seeks leave of court to file an amended complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, which requires leave of court to amend once a responsive pleading has been filed. See Doc. # 13 at 23-24; Fed.R.Civ.P. 15(a)(2). However, no responsive pleading has yet been filed in this case and, therefore, plaintiffs may amend as a matter of right. See Doe v. United States, 58 F.3d 494, 497 (1995)(motion to dismiss not responsive pleading within the meaning of Rule 15(a)); Fed.R.Civ.P. 15(a)(1).  Therefore, this Court need not address plaintiffs' request.

      b.      The County's motion to dismiss plaintiffs' Section 1983 claim in plaintiffs' first cause of action is **GRANTED** as to the County's liability based on the actions of Bruce and **DENIED** insofar as it seeks dismissal based on the actions of other County employees;

      c.      The County's motion to dismiss plaintiffs' Section 1983 claims based on a negligent hiring theory in plaintiffs' second cause of action is **GRANTED**;

      d.      The County's motion to dismiss the state law claims in plaintiffs' third and fourth causes of action based on failure to state a claim under a danger-creation or special relationship theory is **DENIED**;

      e.      The County's motion to dismiss portions of plaintiffs' eighth and ninth causes of action based on failure to state a claim is **DENIED**; and

      f.      The County's motion for more definite statement as to plaintiffs' eighth and ninth causes of action is **DENIED**.

Dated:      June 3, 2008

_____
JOHN A. HOUSTON
United States District Judge