PHILLIP C. SAMOURIS, ESQ. (Bar No. 163303)
samouris@higgslaw.com
MICHELLE L. GRANT, ESQ. (Bar No. 220083)
grantm@higgslaw.com
401 West "A" Street, Suite 2600
San Diego, CA  92101-7913
TEL:  619.236.1551
FAX:  619.696.1410

Attorneys for Specially Appearing Defendant
VIEJAS BAND OF KUMEYAAY INDIANS, a
federally recognized Indian tribe, erroneously sued
as "VIEJAS FIRE DEPARTMENT"

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIM MAXWELL and KAY MAXWELL, individually and as guardians of TREVOR ALLEN BRUCE and KELTEN TANNER BRUCE; and JIM MAXWELL, as executor of the ESTATE OF KRISTEN MARIE MAXWELL-BRUCE,<br><br>                    Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO; ALPINE FIRE PROTECTION DISTRICT; VIEJAS FIRE DEPARTMENT; DEPUTY LOWELL BRYAN "SAM" BRUCE; DOES 1-50,<br><br>                    Defendants. | CASE NO. 07 CV 2385 JAH WMC<br><br><br><br><br><br>**NOTICE OF ENTRY OF ORDER**<br><br><br><br>DEPT:        11 (2nd Floor)<br>JUDGE:       Hon.  John A. Houston |

        **PLEASE TAKE NOTICE** that on June 3, 2008, the Court in the above-entitled action

entered an order granting the motion to dismiss for lack of subject matter jurisdiction filed by

Specially Appearing Defendant VIEJAS BAND OF KUMEYAAY INDIANS, a Federally

Recognized Indian tribe (erroneously sued as "Viejas Fire Department").

///

///

HIGGS, FLETCHER
& MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

866725.1

Maxwell v. VFD / Case No. 07 CV 2385 JAH WMc
Notice of Entry of Order

1

Attached hereto as **Exhibit "A"** is a true and accurate copy of that Order.

2

3

DATED:  July 10, 2008                    HIGGS, FLETCHER & MACK LLP

4

5

By:  /s/ Phillip C. Samouris

PHILLIP C. SAMOURIS, ESQ.

6

MICHELLE L. GRANT, ESQ.

Attorneys for Specially Appearing

7

Defendant VIEJAS BAND OF

KUMEYAAY INDIANS,

8

a Federally Recognized Indian Tribe,

erroneously sued as "Viejas Fire

9

Department"

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HIGGS, FLETCHER
& MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

866725.1                                2                    Maxwell v. VFD / Case No. 07 CV 2385 JAH WMc
                                                             Notice of Entry of Order

# CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing document

## NOTICE OF ENTRY OF ORDER

was served on counsel as indicated below by CM/ECF:

**Attorney for Plaintiffs**
**Charles G. La Bella, Esq.**
**Steven T. Coopersmith, Esq.**
**La BELLA & McNAMARA LLP**
**401 West A Street, Suite 1150**
**San Diego, CA  92101**
**Phone: Telephone (619) 696-9200**
**Fax: Facsimile: (619) 696-9269**
**Email:** scoopersmith@labellamcnamara.com

**Attorney for Defendant**
**Alpine Fire District**
**Stephen M. Caine, Esq.**
**Haight Brown & Bonesteel LLP**
**3750 University Avenue, Ste. 240**
**Riverside, CA  92501-3313**
**Telephone: (951) 341-8300**
**Fax: (951) 341-8309**
**email: scaine@hbblaw.com**

**Attorney for Defendant**
**County of San Diego**
**Morris G. Hill, Esq.**
**County of San Diego Office of**
**County Counsel**
**1600 Pacific Highway, Rm. 355**
**San Diego, CA  92101-2469**
**Telephone: (619) 531-5649**
**Fax: (619) 531-6005**
**Email: morris.hill@sdcounty.ca.gov**

**Attorney for Defendant**
**Lowell Bryan "Sam" Bruce**

**UNKNOWN AT THIS TIME**

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on July 10, 2008, at San Diego, California.

/s/ Phillip C. Samouris
Phillip C. Samouris

Higgs, Fletcher & Mack LLP
Attorneys At Law
San Diego

866725.1

3

Maxwell v. VFD / Case No. 07 CV 2385 JAH WMc
Notice of Entry of Order

**EXHIBIT "A"**

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| JIM MAXWELL and KAY MAXWELL, individually and as guardians of TREVER ALLEN BRUCE and KELTEN TANNER BRUCE; and JIM MAXWELL, as executor of the ESTATE OF KRISTIN MARIE MAXWELL-BRUCE, | Civil No. 07cv2385 JAH(WMc) |

Plaintiffs,

v.

COUNTY OF SAN DIEGO; ALPINE
FIRE PROTECTION DISTRICT;
VIEJAS FIRE DEPARTMENT;
DEPUTY LOWELL; BRYAN "SAM"
BRUCE; DOES 1-50,

Defendants.

**ORDER (1) GRANTING
DEFENDANT VIEJAS FIRE
DEPARTMENT'S MOTION TO
DISMISS [DOC. # 12]; (2)
DENYING DEFENDANT ALPINE
FIRE PROTECTION DISTRICT'S
MOTION TO DISMISS [DOC. # 3];
AND (3) GRANTING IN PART
AND DENYING IN PART
DEFENDANT COUNTY OF SAN
DIEGO'S MOTION TO DISMISS
[DOC. # 5]**

## INTRODUCTION

Pending before this Court are the motions to dismiss filed by defendant Viejas Fire Department ("Viejas Fire"), defendant Alpine Fire Protection District ("Alpine Fire" or "Alpine") and defendant County of San Diego ("the County"). The motions have each been fully briefed by the parties. After a careful consideration of the pleadings and relevant exhibits submitted by the parties, and for the reasons set forth below, this Court GRANTS Viejas Fire's motion; DENIES Alpine Fire's motion; and GRANTS IN PART and DENIES IN PART the County's motion.

## BACKGROUND

**1.    Factual Background**

The instant complaint stems from the shooting and subsequent death of Kristin Marie Maxwell-Bruce ("the decedent") by her husband, Sheriff's deputy Lowell Bryan "Sam" Bruce ("Bruce") on December 14, 2006, at the family home shared by Bruce and the decedent, their children Trever Allen Bruce and Kelten Tanner Bruce ("the children"), and the decedent's parents, Jim and Kay Maxwell ("the Maxwells, ""the grandparents" or "plaintiffs"), who are the owners of the home. Compl. ¶¶ 1, 31. The complaint alleges that, although the decedent was shot in the jaw, she was able to walk to the telephone and dial 911. Id. ¶¶ 3, 32. According to plaintiffs, when the County's sheriff's deputies responded to the 911 call, the scene "quickly became a scene of chaos and disorder under the direction and control of the Sheriff's Department after Sheriff's Deputies learned one of their own was the shooter." Id. ¶ 3. Plaintiffs allege that the scene was then locked down and the decedent was not allowed to be taken to the hospital resulting in the decedent's death at the scene, occurring approximately one hour after the 911 call was made, by "suffocat[ing] and drown[ing] in her own blood." Id.

The complaint alleges plaintiffs were not allowed to see, speak or comfort the decedent, or see, speak or comfort each other during the period of time that elapsed between the 911 call and the decedent's death. Id. ¶ 37. The complaint further alleges that an unknown sheriff's deputy hit Jim Maxwell with a baton and pepper-sprayed him in the face when he tried to reach his wife. Id. ¶¶ 37, 67, 72. The Maxwells claim they did not learn of their daughter's death until after the news media had reported it and aver that the defendants lead the news media to believe Jim Maxwell was a suspect in the shooting. Id. ¶¶ 3, 37, 78, 84. In addition, the complaint alleges the County hired Bruce as a Deputy Sheriff even after he had failed a psychological examination twice, and allowed him to take his "County-issued weapon" home although "he was unfit for duty and prone to violence." Id. ¶ 2, 18, 29.

//

## 2.   Procedural History

The instant complaint was filed on December 19, 2007, alleging causes of action against the County pursuant to 42 U.S.C. § 1983, based on deprivation of plaintiffs' rights to familial relationships under the Fourth and Fourteenth Amendments to the United States Constitution (first cause of action) and for negligent hiring practices pursuant to Monell v. New York City Department of Social Services, 436 U.S. 658, 691-94 (1978)("Monell"), along with various state law claims based on allegations of wrongful death, survival action, excessive force, battery, intentional infliction of emotional distress, and negligent infliction of emotional distress. The complaint alleges Viejas Fire and Alpine Fire participated in the events that resulted in the decedent's wrongful death, giving rise to the state law claims against them, with the exception of the claims for excessive force and battery that are directed solely at the County.

Alpine Fire's and the County's motions to dismiss were both filed on January 10, 2008. Viejas Fire's motion was filed on January 24, 2008. Plaintiffs' oppositions to Alpine Fire's and the County's motion were filed on February 5, 2008, and their opposition to Viejas Fire's motion was filed on February 15, 2008. Reply briefs by Alpine Fire and the County were filed on February 12, 2008, and the reply by Viejas Fire was filed on February 25, 2008. After review of the pleadings submitted, this Court took the motions under submission without oral argument. See CivLR 7.1(d.1); Docs. # 17, 20.

## DISCUSSION

Viejas Fire and Alpine Fire each move to dismiss the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. Viejas Fire moves on the grounds that  the doctrine of tribal sovereign immunity bars plaintiffs' suit against it. Alpine Fire separately moves on the grounds that supplemental jurisdiction over the state law claims should not be exercised because the state law claims do not arise from the same common nucleus of operative facts as those alleged for the federal claims. The County moves to dismiss the first, second, third and fourth causes of action, and certain claims alleged in the eighth and ninth causes of action

07cv2385

1  for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6)

2  of the Federal Rules of Civil Procedure.  The County also moves for a more definite

3  statement, pursuant to Rule 12(e) of the Federal Rules of Civil Procedure as to other

4  claims presented in the eighth and ninth causes of action.

5  1.    **Legal Standards**

6        a.    **Subject Matter Jurisdiction [Fed.R.Civ.P. 12(b)(1)]**

7              i.    **In General**

8        "A motion to dismiss for lack of subject matter jurisdiction may either attack the

9  allegations of the complaint or may be made as a 'speaking motion' attacking the existence

10 of subject matter jurisdiction in fact." Thornhill Publishing Co. v. General Tel & Elect.,

11 594 F.2d 730, 733 (9th Cir. 1979); see also Fed. R. Civ. P. 12(b)(1). "Unlike a Rule

12 12(b)(6) motion, a Rule 12(b)(1) motion can attack the substance of a complaint's

13 jurisdictional allegations despite their formal sufficiency, and in doing so rely on affidavits

14 or any other evidence properly before the court." St. Clair v. City of Chico, 880 F.2d 199,

15 201 (9th Cir. 1989).  Thus, the existence of disputed material facts will not preclude the

16 trial court from evaluating for itself the merits of jurisdictional claims.  Id.

17       Where the defendant brings the motion as a "speaking motion" presenting a factual

18 challenge to subject matter jurisdiction, the Court may consider extrinsic evidence on

19 whether jurisdiction exists and may resolve factual disputes if necessary. Thornhill, 594

20 F.2d at 733.   Because the plaintiff bears the burden of establishing subject matter

21 jurisdiction, no presumption of truthfulness attaches to the allegations of plaintiff's

22 complaint and the Court must presume it lacks jurisdiction until plaintiff establishes

23 jurisdiction. Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir.

24 1989).

25             ii.    **Tribal Sovereign Immunity**

26       "Suits against Indian tribes are ... barred by sovereign immunity absent a clear

27 waiver by the tribe or congressional abrogation." Oklahoma Tax Comm'n v. Citizen Band

28 Potawatomi Indian Tribe, 498 U.S. 505, 509 (1991); Snow v. Quinault Indian Nation,

709 F.2d 1319, 1321 (9th Cir.1983). Tribal sovereign immunity deprives a court of subject matter jurisdiction. *See* Pit River Home & Ag. Coop. Ass'n v. United States, 30 F.3d 1088, 1102-03 (9th Cir.1994); Pan Am. Co. v. Sycuan Band of Mission Indians, 884 F.2d 416, 418 (9th Cir.1989). "There is a strong presumption against waiver of tribal sovereign immunity." Demontiney v. U.S. *ex rel*. Dept. of Interior, Bureau of Indian Affairs, 255 F.3d 801, 811 (9th Cir. 2001). Waiver of sovereign immunity by a tribe must be unequivocally expressed and may not be implied. Kescoli v. Babbitt, 101 F.3d 1304, 1310 (9th Cir.1996); Quileute Indian Tribe v. Babbitt, 18 F.3d 1456, 1459 (9th Cir.1994); McClendon v. United States, 885 F.2d 627, 629 (9th Cir.1989); Snow, 709 F.2d at 1321. Similarly, congressional abrogation of sovereign immunity may not be implied and must be "unequivocally expressed" in "explicit legislation." Krystal Energy Co. v. Navajo Nation, 357 F.3d 1055, 1056 (9th Cir.2003); Demontiney, 255 F.3d at 811. Plaintiffs bear the burden of demonstrating there was an express and unequivocal waiver of tribal sovereign immunity. *See* Baker v. United States, 817 F.2d 560, 562 (9th Cir.1987); Breakthrough Mgmt. Group, Inc. v. Chukchansi Gold Casino & Resort, 2007 WL 2701995 *2 (D.Colo.2007). Absent an express and unequivocal waiver of immunity by the tribe or abrogation of tribal immunity by Congress, tribes cannot be sued. Stock West Corp. v. Lujan, 982 F.2d 1389, 1398 (9th Cir.1993).

Tribal sovereign immunity applies in both federal and state courts. *See* Santa Clara Pueblo v. Martinez, 436 U.S. 49, 68 (1978); Puyallup Tribe, Inc. v. Department of Game of Washington, 433 U.S. 165, 171-73 (1977); Snow, 709 F.2d at 1321; United States v. Oregon, 657 F.2d 1009, 1012-13 (9th Cir.1981). "The immunity ... extends to suits for declaratory and injunctive relief," and "is not defeated by an allegation that [the tribe] acted beyond its powers." Imperial Granite Co. v. Pala Band of Mission Indians, 940 F.2d 1269, 1271 (9th Cir.1991). Tribal sovereign immunity is not dependent on a distinction between on-reservation and off-reservation conduct nor upon a distinction between the governmental and commercial activities of a tribe.. Kiowa Tribe v. Manufacturing Techs., 523 U.S. 751, 754-55, 759-60 (1998); Allen v. Gold Country Casino, 464 F.3d 1044,

1    1046 (9th Cir.2006); American Vantage Cos. v. Table Mt. Rancheria, 292 F.3d 1091,

2    1100 (9th Cir.2002); Bassett v. Mashantucket Pequot Tribe, 204 F.3d 343, 357 (2d

3    Cir.2000). A tribe's sovereign immunity extends both to tribal governing bodies and to

4    tribal agencies which act as an arm of the tribe. See Allen, 464 F.3d at 1046; see also

5    Marceau v. Blackfeet Hous. Auth., 455 F.3d 974, 978 (9th Cir.2006); Pink v. Modoc

6    Indian Health Project, 157 F.3d 1185, 1188 (9th Cir.1998). Thus, it is irrelevant whether

7    the particular tribal entity is conducting business activities because the appropriate

8    question is whether the particular "entity acts as an arm of the tribe so that the entity's

9    activities are properly deemed to be those of the tribe." Allen, 464 F.3d at 1046.

10                  iii.    **Supplemental Jurisdiction**

11           Under 28 U.S.C. § 1367, a district court may exercise supplemental jurisdiction

12   over state law claims that "form part of the same case or controversy under Article III of

13   the United States Constitution." 28 U.S.C. § 1367(a). The "[s]ame case or controversy"

14   is defined as multiple claims that arise from "a common nucleus of operative facts" that

15   a plaintiff "would ordinarily be expected to try ... all in a single judicial proceeding."

16   United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966). However, 28

17   U.S.C. § 1367(c)(2) explicitly allows a reviewing court to decline to exercise supplemental

18   jurisdiction if:

19           (1)  the claim raises a novel or complex issue of State law,
             (2)  the claim substantially predominates over the claim or claims over which the
20           district court has original jurisdiction,
             (3)  the district court has dismissed all claims over which it has original jurisdiction,
21           or
             (4)  in exceptional circumstances, there are other compelling reasons for declining
22           jurisdiction.

23   28 U.S.C. §§ 1367(c)(1)-(4). Thus, it is well within a court's discretion to exercise, or

24   decline to exercise supplemental jurisdiction over state law claims. Gibbs, 383 U.S. at 726;

25   Schneider v. TRW, Inc., 930 F.2d 986, 994 (9th Cir. 1991). When deciding whether to

26   exercise supplemental jurisdiction, a court should consider judicial economy, convenience,

27   fairness and comity. Gibbs, 383 U.S. at 726.

28   //

07cv2385

**b.    Failure to State a Claim [Fed.R.Civ.P. 12(b)(6)]**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984); see Neitzke v. Williams, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. Robertson, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," he must plead sufficient facts that, if true, "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007).

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. Thompson v. Davis, 295 F.3d 890, 895 (9th  Cir. 2002); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. Ileto v. Glock, Inc., 349 F.3d 1191, 1200 (9th Cir. 2003); Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).  When ruling on a motion to dismiss, the Court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the Court takes judicial notice. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).  If a court determines that a complaint fails to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts. See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).

//

//

//

c.    **More Definite Statement [Fed.R.Civ.P. 12(e)]**

"If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed.R.Civ.P. 12(e). Rule 12(e) motions are appropriate only under limited circumstances. *See* 5C Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE (Civ. 3d § 1376 (2004). However, when addressing a Rule 12(e) motion, "the judge may in his discretion ... require such detail as may be appropriate in the particular case." McHenry v. Renne, 84 F.3d 1172, 1179 (9th Cir. 1996).

2.    **Analysis**

a.    **Viejas Fire's Motion**

Viejas Fire moves to dismiss the instant complaint for lack of subject matter jurisdiction based on the doctrine of tribal sovereign immunity. Viejas Fire explains that it is an entity of the Viejas Band of Kumeyaay Indians ("the Viejas Band" or "the Band"), a federally recognized Indian tribe.[1]  Doc. # 12-2 at 1. Viejas Fire further explains that it was established in October 2006 to assist the Viejas Band by providing fire protection and emergency medical services to the Band's 1,600 acre reservation and its surrounding communities upon request. Doc. # 12-2 at 1, 3-4; Barrett Decl. ¶ 4. Viejas Fire points out that it is "wholly funded by the Band" and "is not incorporated or otherwise organized under the laws of any state." Id. at 4. As such, Viejas Fire contends it is immune from suit absent waiver of its sovereign immunity or abrogation by Congress of the Viejas Band's immunity. Id. at 6. Viejas Fire argues that no waiver or abrogation has occurred to overcome its sovereign immunity from suit. Id.

In opposition, plaintiffs do not dispute that the Viejas Band is a federally recognized Indian tribe subject to sovereign immunity. However, plaintiffs claim that

---

[1] In support, Viejas seeks judicial notice of the Federal Register listing of federally recognized tribes compiled by the Bureau of Indian Affairs which includes the Viejas Band in its inventory. Doc. # 12-2 at 5; Doc. # 12-3, Exh. A. This Court deems it appropriate to take judicial notice of the Federal Register listing as evidence demonstrating that the Viejas Band is a federally recognized Indian tribe.

07cv2385

1  Viejas Fire entered into a "mutual aid agreement" with defendant Alpine Fire pursuant to

2  California Health and Safety Code § 13863,[2] which plaintiff argues constitutes an

3  unequivocal waiver of its sovereign immunity. Doc. # 18 at 3, 5-6 (citing C & L

4  Enterprises v. Citizen Band of Potawatomi Indian Tribe of Oklahoma, 532 U.S. 411, 423

5  (2001)(where Indian tribe entered into a contract with a choice of law clause, the tribe

6  waived its sovereign immunity); Smith v. Hopland Band of Pomo Indians, 95

7  Cal.App.4th 1 (2002)(same)).

8       Viejas Fire points out, in reply, that plaintiffs' allegations regarding the mutual aid

9  agreement lack any factual support and, thus, must be rejected. Doc. # 19 at 2. Viejas

10 Fire contends that "[p]laintiffs cannot simply rely on the allegations raised in their

11 Complaint" to defeat a motion to dismiss for lack of subject matter jurisdiction. Id.

12 Instead, Viejas Fire contends that plaintiffs must "furnish affidavits or other evidence

13 necessary to satisfy [their] burden of establishing subject matter jurisdiction." Id. (citing

14 Savage v. Glendale Union High School, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)). Viejas

15 Fire claims plaintiffs have failed to meet their burden. Id.

16      This Court agrees with Viejas Fire. Plaintiffs merely allege, in their complaint and

17 in their pleadings, that there exists a mutual aid agreement between Alpine Fire and Viejas

18 Fire. See Compl. ¶¶ 59, 60; Doc. # 18 at 4-5. Plaintiffs provide no evidence to support

19 their allegations concerning the existence of a mutual aid agreement and Viejas Fire

20 disputes that such an agreement exists. See Doc. # 19 at 2, 4. Without proof of a mutual

21 aid agreement, plaintiffs cannot meet their burden of demonstrating subject matter

22 jurisdiction exists. Stock West, 873 F.2d at 1225. This Court, therefore, finds that

23 Viejas Fire is entitled to tribal sovereign immunity as an entity of the Viejas Band and no

24 waiver of immunity or abrogation by Congress has been demonstrated to have occurred

25

26      [2] Section 13863(a) provides that: "[a] district may enter into mutual aid agreements with any ...
   federally recognized Indian Tribe." Section 13863(b) provides that an "Indian tribe ... shall have the same
27 immunity from liability for civil damages on account of personal injury to or death of any person ... resulting
   from acts or omissions of its fire department personnel in the performance of the provisions of the mutual
28 aid agreement as is provided by law for the district . . . except when the act or omission occurs on property
   under the control of the . . . federally recognized Indian tribe."

1   to overcome that litigation bar.[3]  Accordingly, Viejas Fire's motion to dismiss for lack of

2   subject matter jurisdiction based on tribal sovereign immunity is GRANTED and Viejas

3   Fire is DISMISSED as a defendant in this case.

4         **b.    Alpine Fire's Motion**

5         Alpine Fire moves to dismiss the complaint against it on the grounds that

6   supplemental jurisdiction over the state law claims should not be exercised because there

7   is no common nucleus of operative facts connecting the federal claims with the state claims

8   alleged.  *See* Doc. # 3.  Alpine Fire claims that the "nucleus of facts comprising the

9   excessive force/assault claims against the County," which are the only federal claims

10  alleged, "are utterly unrelated to, and independent of, the nucleus of facts comprising the

11  claims of grossly negligent emergency care rendered by the paramedics/EMTs from Alpine

12  ..." Doc. # 3-2 at 5.  According to Alpine Fire, "[t]he only relationship between the two

13  claims is that one followed the other in time." Id. at 7.  Alpine Fire claims that "[t]he key

14  facts do not overlap ... for any purpose beyond providing background." Id.

15        Plaintiffs contend, in opposition, the complaint "clearly allege[s] that the majority

16  of the constitutional violations alleged against the County occurred at the same time as

17  Alpine's gross negligence, and were inextricably connected with Alpine's ... actions." Doc.

18  # 14 at 5.  Plaintiffs point out that the complaint alleges the County and Alpine each had

19  respective roles in the alleged refusal to transport the decedent to the hospital resulting in

20  the decedent's "asphyxiation on her own blood." Id.  Plaintiffs note that both the County

21  and Alpine were at the scene acting at the same time and their "combined actions [are

22  alleged to have] caused [the decedent's] death." Id. (citing Compl. ¶¶ 3, 53, 54, 56, 57).

23  Thus, plaintiffs contend that "[i]t is not possible to neatly separate Alpine's actions from

24  the County's." Id.  In addition, plaintiffs claim that judicial economy, convenience and

25  fairness weigh in favor of adjudicating the claims against the County and Alpine in one

26  _____

27        [3] Because this Court finds plaintiffs have failed to meet their burden of demonstrating subject matter
    jurisdiction exists by failing to prove the existence of a mutual aid agreement that might constitute a waiver
    of tribal sovereign immunity under California law, this Court does not address whether such an agreement

28  constitutes a waiver in this case or Viejas Fire's alternative arguments concerning whether it is proper for this
    Court to assume supplemental jurisdiction over the claims against Viejas Fire.

1   single trial. Id. at 6-7.

2       In reply, Alpine Fire argues that the claims can, in fact, be separately easily because

3   "the claims and law applicable to the Sheriffs are clearly different from the claims and law

4   relevant to the paramedics." Doc. # 16 at 2. Alpine Fire points out that there are simple

5   remedies that can be applied to ensure no duplication of effort or conflicting rulings will

6   occur if the claims against the County and Alpine are tried separately. Id. at 2-3.

7       This Court disagrees with Alpine. This Court is unconvinced that the claims arising

8   out the actions of both the County and Alpine during the time period between the

9   shooting and the decedent's death are not intertwined. The complaint clearly alleges that

10  both the County's and Alpine's actions contributed to the injuries suffered by plaintiffs.

11  See Compl. ¶¶ 3, 53, 54, 56, 57. There does not appear to be any dispute that the County

12  and Alpine's actions that spawned the instant lawsuit arise from the same set of facts.

13  Thus, this Court finds that the claims against both the County and Alpine arise out of a

14  common nucleus of operative facts. This Court also finds that the notions of judicial

15  economy, convenience, fairness and comity dictate that the claims against the County and

16  Alpine be adjudicated in one single judicial proceeding.[4] Gibbs, 383 U.S. at 725.

17  Therefore, Alpine's motion to dismiss for lack of subject matter jurisdiction is DENIED.

18      c.    **The County's Motion**

19      The County moves to dismiss plaintiffs' first second, third and fourth causes of

20  action and certain claims contained in plaintiffs' eighth and ninth causes of action for

21  failure to state a claim upon which relief may be granted. Specifically, the County seeks

22  dismissal on the grounds that (1) the Maxwells lack standing to sue on their own behalf

23  for wrongful death under Section 1983; (2) the County cannot be held liable (a) because

24  Bruce did not act under color of state law; (b) because it cannot be held accountable for

25  negligently hiring and providing a gun to a person with psychological problems under

26

27      [4] This Court notes Alpine has indicated that, if the instant motion is denied, it may, at some later
    date, seek to bifurcate the trial so  the claims against it could be tried separately from the claims against the
28  County. See Doc. # 3-2 at 2. This ruling in no way precludes Alpine from seeking such a bifurcation at a
    later time.

1  either federal or state law;  and (c) it cannot be held accountable under a danger-creation

2  or special relationship theory based on federal or state law.  In addition, the County seeks

3  a more definite statement on plaintiffs' claims for intentional and negligent infliction of

4  emotional distress.[5]

5        **1.   Standing**

6        The County contends that the Maxwells "have no claim in their own rights under

7  the first cause of action" based on deprivation of the Maxwells' right to familial

8  relationship with the decedent under the Fourth and Fourteenth Amendments to the

9  United States Constitution.  Doc. # 5-2 at 22 (citing Smith v. City of Fontana, 818 F.3d

10  1411 (9th Cir. 1987); Estate of Johnson v. Village of Libertyville, 819 F.3d 174 (7th Cir.

11  1987)); see Compl. ¶ 41.  Plaintiffs point out, in opposition, that the Maxwells' standing

12  is based on an alleged deprivation of their own familial relationship with the decedent, a

13  claim plaintiffs argue can be properly asserted here.  Doc. # 13 at 5-6 (citing Doty v.

14  Carey, 626 F.Supp. 359 (N.D.Ill. 1986)(allowing parents to bring Section 1983 claim on

15  their own behalf despite not being proper plaintiffs under Illinois' wrongful death statute);

16  Penilla v. City of Huntington Park, 115 F.3d 707, 711 (9th Cir. 1997)(parent could

17  pursue Fourteenth Amendment claim in her own right based on deprivation of familial

18  relationship with son);  Munger v. City of Glasgow, 227 F.3d 1082 (9th Cir.

19  2000)(parents sued individually and on behalf of decedent son's estate for constitutional

20

21      [5] The County also presents a lengthy discussion concerning an alleged "incurable conflict of interest"
that the County claims exists between the grandparents and the children plaintiffs, suggesting that the

22  children could, based on the facts alleged in the complaint, sue their grandparents under similar theories to
those alleged against the County.  See Doc. # 5-2 at 11-14.  The County contends the conflict exists on both

23  a personal representative level, since the grandparents personally represent the interests of the children and
the decedent's estate, as well as on a legal representation level, in that plaintiffs' counsel represent all parties

24  with conflicting interests. Id. at 13.  The County worries "that issues already raised in the complaint will not
be thoroughly litigated against all parties while the conflict exists" and, thus, requests the Court "exercise

25  its inherent power to protect vulnerable plaintiffs who cannot safeguard their own rights." Id. at 14. Plaintiffs
contend in opposition, that the conflicts defendants point to are not actual conflicts but, instead, are merely

26  potential conflicts which are, nevertheless, "patently frivolous." Doc. # 13 at 20.  Plaintiffs point out that
the cases cited by defendants involved actual conflicts, not potential ones. Id. at 21.  This Court, however,

27  notes that defendants do not expressly seek dismissal based on this alleged "incurable conflict," simply
suggesting this Court "exercise its inherent power to protect" the children plaintiffs from possible harm. Doc.

28  # 5-2 at 14; Doc. # 15 at 3. This Court finds the instant motion is not the proper avenue to seek such relief.
Therefore, this Court deems it inappropriate to address this issue here.

1  violations against county sheriff's department and police department)).

2      The County, in reply, concedes that the Maxwells have standing to assert their own

3  personal Fourth Amendment "death-based claims," if they have any such claims, but notes

4  that "it is problematic" because the Supreme Court has left open the question of whether

5  parents of a middle-aged adult child who is married with children can assert a Fourth

6  Amendment claim for loss of their familial relationship.  Doc. # 15 at 5-6.  Thus, the

7  County states that "[a]t this juncture, [it] merely preserves its rights and objections"

8  regarding the standing issue.  Id. at 6.  This Court construes the County's representations

9  as withdrawing this contention but preserving its rights and objections to readdress its

10  concerns, if necessary, at some later date.  Accordingly, the County's motion to dismiss the

11  Maxwells' first cause of action based on lack of standing is WITHDRAWN.

12      **2.**    **The County's Liability**

13      The County next moves to dismiss plaintiffs' Section 1983 claims on the grounds

14  that (a) the County cannot be held liable because Bruce was not acting under color of state

15  law; (b) the County cannot be held liable for negligently hiring or providing Bruce with

16  a gun; and (c) the County cannot be held liable under a danger-creation or special

17  relationship theory.

18      **a.**    **Acting under Color of State Law**

19      42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute,

20  ordinance, regulation, custom, or usage, of any State or Territory or the District of

21  Columbia, subjects, or causes to be subjected, any citizen of the United States or other

22  person within the jurisdiction thereof to the deprivation of any rights, privileges, or

23  immunities secured by the Constitution and laws, shall be liable to the party injured in an

24  action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

25  The County argues that it cannot be held liable for Bruce's actions because Bruce was not

26  acting under color of state law at the time of the shooting.  Doc. # 5-2 at 14.

27      In opposition, plaintiffs point out that the County "simply ignore[s] the acts of

28  County employees, other than Bruce, who are alleged to have caused [the decedent's]

1    death." Doc. # 13 at 6. Plaintiffs point out that the complaint specifically alleges "after

2    [the decedent] called 911 for help, the San Diego Sheriff's Department responded, but the

3    scene of the shooting quickly became a scene of chaos and disorder 'under the direction

4    and control of the Sheriff's Department ...'" Id. (quoting Compl. ¶ 3)(emphasis omitted).

5    Plaintiffs further point out that the complaint alleges "sheriff's deputies, acting under color

6    of state law and within the scope of their employment, caused [the decedent's] death by

7    locking down the scene of the shooting, by seizing [the decedent] and taking custody of

8    her, by refusing to allow [her] to be taken to the hospital, by refusing to allow [the

9    Maxwells] to attend to [her], by performing emergency medical services in a grossly

10   negligent manner and by deliberate indifference to her obvious medical needs." Id. at 7

11   (citing Compl. ¶¶ 3, 4, 35, 36, 37, 38, 41).  The County notes, in reply, that plaintiffs'

12   complaint contains no allegations concerning the decedent being taken into custody or

13   seized but, instead, alleges only that the Maxwells "were 'unlawfully detained and falsely

14   imprisoned' and 'restrained.'" Doc. # 15 at 4 (citing Compl. ¶ 37)(emphasis omitted).

15          The complaint alleges, in pertinent part, as follows:

16          Sheriff's Deputies locked down the scene of the shooting and refused to let
             [the decedent] be taken to the hospital . . . During the last hour of [the
17          decedent's] life, Defendants refused to let her parents see her [and] refused
             to let them speak to her or comfort her . . . Sheriff's Department employees
18          . . . – all acting within the course and scope of their employment as
             emergency medical services providers – caused [the decedent's] death by
19          performing medical services, including but not limited to first aid, medical
             treatment, rescue procedures, transportation, and other necessary and related
20          activities in a grossly negligent manner.

21   Compl. ¶¶ 36-37. These allegations, in this Court's view, clearly state a claim for injury

22   caused by the County by County employees acting under color of state law.  Therefore,

23   this Court finds that, although it is clear that Bruce was not acting under color of state

24   law, other County employees were clearly so acting.   Accordingly, the County's motion

25   to dismiss is GRANTED as to the County's liability based on Bruce's actions but DENIED

26   insofar as it seeks dismissal based on the actions of other County employees.

27   //

28   //

                                        14                                    07cv2385

**b.    Negligent Hiring and Providing a Gun**

1      The County also contends that it cannot be held liable under Section 1983 for

2 negligently hiring and providing a gun to Bruce[6] even if the County knew of his

3 psychological problems. Doc. # 5-2 at 14. According to the County, the instant case is

4 analogous to the case of <u>Board of County Commissioners of Bryan County v. Brown</u>, 520

5 U.S. 397 (1997), in which the Supreme Court determined that, for the County to be held

6 liable under Section 1983 for negligently hiring Bruce and providing him with a gun,

7 plaintiffs must demonstrate that the shooting was "'a plainly obvious consequence of the

8 hiring decision.'" <u>Id.</u> at 16 (quoting <u>Brown</u>, 520 U.S. at 412). The County points out that

9 the complaint "affirmatively alleges in great detail that Mr. Bruce already had

10 psychological issues before the County hired him" and argues that "[h]e would have had

11 the same issues whether or not the County hired him." <u>Id.</u> Thus, the County contends

12 there is no direct link between the alleged deficiencies, that is, the County's screening

13 process for hiring purposes, and the alleged constitutional violation, in this case, the

14 shooting and death of the decedent. <u>See id.</u>

15      In opposition, plaintiffs point out that their claims are not predicated solely on the

16 negligent hiring of Bruce or providing him with a weapon but, instead, include allegations

17 of gross negligence which subject the County to vicarious liability for the actions of its

18 employees acting within the scope of their employment.[7] Doc. # 13 at 16. However, as

19 the County notes in reply, plaintiffs fail to address the <u>Brown</u> decision and its impact on

20 plaintiffs' claims.[8] <u>See</u> Doc. # 15 at 6. The County contends plaintiffs' allegations in the

21 second cause of action, as well as the general factual allegations concerning the County's

---

[6] In the second cause of action, plaintiffs seek to hold the County liable for its "reckless hiring policies and practices" that resulted in the hiring of Bruce as a deputy and providing him with a gun based on <u>Monell</u> liability. <u>See</u> Compl. ¶¶ 45-47; Doc. # 13 at 14.

[7] These allegations are found in plaintiffs' third and fourth causes of action. <u>See</u> Compl. ¶¶ 53-54, 56-57.

[8] Plaintiffs' only argument in response to the County's contentions regarding supervisory liability center on whether the County was acting on behalf of the state or the county during the incident at issue. <u>See</u> Doc. # 13 at 14-15. However, this Court's reading of the pleadings reflects that this issue was not presented by the County in its motion. Therefore, this Court does not address it.

07cv2385

1  hiring of Bruce and providing him with a gun, center on the "hiring-policy type of liability"

2  that was precluded in <u>Brown</u>. <u>Id.</u> (citing Compl. ¶¶ 17-30, 45-47, 49).

3       Based on a careful review of the case authority cited, this Court finds plaintiffs'

4  claims that the County negligently hired Bruce and provided him with a gun are

5  insufficient to state a Section 1983 claim under <u>Monell</u>, 436 U.S. at 691-94. *See* <u>Brown</u>,

6  520 U.S. at 412.  There appears to be no dispute that <u>Brown</u> bars plaintiffs from seeking

7  relief based on a negligent hiring theory because causation cannot be established under the

8  facts of this case.[9]  Therefore, the County's motion to dismiss plaintiffs' second cause of

9  action and any general allegations concerning negligent hiring and providing Bruce with

10  a gun is GRANTED.

11              c.    **Danger-Creation/ Special Relationship Theories**

12       The County next moves to dismiss plaintiffs' claims for wrongful death and survival

13  action under California law, contained in plaintiffs' third and fourth causes of action, on

14  the grounds that the County is not liable under a danger-creation or special relationship

15  theory. Doc. # 5-2 at 19-22 (citing, *inter alia*, <u>Davidson v. City of</u> Westminster, 32 Cal.3d

16  197 (1982); <u>Williams v. State of California</u>, 34 Cal.3d 18 (1983)).  In <u>Davidson</u>, the

17  California Supreme Court explained that:

18       As a general rule, one owes no duty to control the conduct of another, nor
         to warn those endangered by such conduct. Such a duty may arise, however,
19       if '(a) a special relation exists between the actor and the third person which
         imposes a duty upon the actor to control the third person's conduct, or (b)
20       a special relation exists between the actor and the other which gives the other
         a right to protection.

21

22  <u>Davidson</u>, 32 Cal.3d at 203 (citations omitted).  However, in regards to police officers'

23  liability, the <u>Davidson</u> court found that the "mere proximity" of a person to someone

24  officers know or suspect is a threat does not establish a special relationship imposing a

25  duty on the officers to control that threat.  <u>Id.</u> at 205.  In <u>Williams</u>, the California

26

27  _____

     [9] The County also contends that it cannot be held liable under California law on a negligent hiring
28  or negligent supervision theory. *See* Doc. # 5-2 at 15-19 (citing <u>de Villers v. County of San Diego</u>, 156
     Cal.App.4th 238, 244-245 (2007)). However, because plaintiffs concede their "state law causes of action ...
     are not predicated on 'providing a gun' or negligently hiring a killer,'" this Court need not address this issue.

1  Supreme Court expounded on this rule, explaining that a person, including a law

2  enforcement officer, who does not create the peril has no duty to come to the aid of

3  another may still be held liable if, by aiding another "his failure to exercise such care

4  increases the risk" of harm or "the harm is suffered because of the other's reliance upon

5  the undertaking." Williams, 34 Cal.3d at 23-24.  In other words, the County may be held

6  liable under Williams if its employees came to the aid of the decedent but then failed to

7  exercise the proper care or simply failed to act to the decedent's detriment.  The County

8  argues that, here, the duty was not triggered here.  Doc. # 5-2 at 22.

9      In opposition, plaintiffs contend that, "[b]y locking down the scene, by refusing to

10  let [the decedent] be taken to the hospital, and by affirmatively undertaking to provide

11  emergency medical services, sheriff's deputies created a 'special relationship' under

12  California [s]tate law and situation of dependency resulting in detrimental reliance." Doc.

13  # 13 at 17.  Thus, plaintiffs argue that, under the circumstances here, the County created

14  a "special relationship" that gave rise to a duty of care because sheriff's deputies are alleged

15  to have taken affirmative actions at the scene, noting that "there may be a duty to refrain

16  from conduct which prevents others from giving assistance." Id. at 18-19 (citing Clemente

17  v. State of California, 40 Cal.3d 202 (1985)).  Plaintiffs claim the County did just that,

18  "by refusing to allow [the decedent] to be taken to the hospital, and by refusing to allow

19  [the Maxwells] to attend to [the decedent]." Id. at 18.

20      The County claims, in reply, that the California Supreme Court has disapproved

21  the notion that a special relationship may arise solely from the fact of dependency. See

22  Doc. # 15 at 8 (citing Williams, 34 Cal.3d at 26-28 n. 9).  The County also claims

23  plaintiffs have cited no authority to support their theory concerning the "potential 'duty

24  to refrain from conduct which prevents others from giving assistance' ... in the context of

25  official responses to serious medical emergencies." Id.  The County points out that  the

26  special relationship liability under California law is narrow and "is not triggered 'simply

27  because police officers responded to a call for assistance and took some action at the

28  scene.'" Id. at 9 (quoting Adams v. City of Fremont, 68 Cal.App.4th 243, 279 (1998)).

07cv2385

1   In ruling on a motion to dismiss under Rule 12(b)(6), this Court must view the

2   allegations presented in the light most favorable to plaintiffs. <u>Thompson</u>, 295 F.3d at

3   895; <u>Cahill</u>, 80 F.3d at 337-38. Thus, this Court cannot, at this stage of the proceedings,

4   view plaintiffs' allegations as narrowly as the County seeks. Plaintiffs' complaint clearly

5   alleges "Sheriff's Deputies locked down the scene and refused to let [the decedent] be

6   taken to the hospital" and that defendants, including the County's sheriff's deputies,

7   "refused to let [the Maxwells] see, speak or comfort her." Compl. ¶¶ 36, 37. Viewing

8   these allegations in plaintiffs' favor, this Court finds the complaint sufficiently alleges the

9   County's employees took more than just "some action at the scene," <u>Adams</u>, 68

10  Cal.App.4th at 279, thereby triggering a special relationship between the County and the

11  decedent. Therefore, this Court finds the County's arguments fail. Accordingly, the

12  County's motion to dismiss plaintiffs' state law claims contained in the third and fourth

13  causes of action for failure to state a claim under a danger-creation or special relationship

14  theory is DENIED.

15          **3.      More Definite Statement**

16  Lastly, the County moves for a more definite statement as to plaintiffs' claims

17  presented in the eighth and ninth causes of action for intentional and negligent infliction

18  of emotional distress.[10] *See* Doc. # 5-2 at 25. The County claims the complaint "lump[s]

19  all other allegations [besides those that allege the decedent's suffering and death and

20  excessive force] together[]" which prevents the County from "determin[ing] which claims

21  are directed at the County ... and [from] identify[ing] events or circumstances from which

22  those claims arise sufficient to formulate a meaningful answer." <u>Id.</u> As examples, the

23  County points to plaintiffs' allegations that "[d]efendants' incompetence or arrogance even

24  caused the news media to believe Jim was a 'suspect'" and "Kristin's young boys were also

---

25          [10] The County also moves to dismiss those portions of these two causes of action that "seek to hold

26  the County liable for inflicting emotional distress by causing the wife's suffering and death" based on the
    arguments presented previously for the first through fourth causes of action. Doc. # 5-2 at 24-25. Because

27  this Court denies the County's motion as it relates to all of plaintiffs' allegations in the first through fourth
    causes of action, with the exception of the allegations concerning negligent hiring which is not addressed in

28  the eighth and ninth causes of action, the County's motion to dismiss portions of plaintiffs' eighth and ninth
    causes of action on the previously presented bases must be DENIED as well.

07cv2385

1    mistreated by defendants." Id. (citing Compl. ¶ 37). Plaintiffs disagree, contending the

2    allegations are clear enough to allow the County to admit or deny the allegations, in that

3    the allegations contain enough information to notify the County of the claims against it.

4    Doc. # 15 at 22.

5        This Court's review of the complaint reveals that plaintiffs are correct. Although

6    the complaint is certainly not precise, in that some of the allegations contained in the

7    eighth and ninth causes of action could be attributed to any one of the defendants or all

8    of them, there is no reason for the County not to assume the allegations presented do not

9    apply to it. As such, the County could admit or deny these imprecise allegations whether

10   or not they are applicable to a different defendant. This Court finds plaintiffs' complaint

11   is not "so vague or ambiguous that [the County] cannot reasonably be required to frame

12   a responsive pleading," requiring a more definite statement under Rule 12(e).

13   Fed.R.Civ.P. 12(e). Accordingly, the County's motion for a more definite statement is

14   DENIED.[11]

15                        **CONCLUSION AND ORDER**

16       Based on the foregoing, IT IS HEREBY ORDERED that:

17       1.    Viejas Fire's motion to dismiss [doc. # 12] is **GRANTED** and Viejas Fire is

18             **DISMISSED** as a defendant in this case;

19       2.    Alpine Fire's motion to dismiss [doc. # 3] is **DENIED;**

20       3.    The County's motion to dismiss [doc. # 5] is **GRANTED IN PART** and

21             **DENIED IN PART** as follows:

22             a.    The County's motion to dismiss the Maxwell's claims in plaintiffs'

23                   first cause of action for lack of standing is **WITHDRAWN;**

24

25

26   [11] Plaintiffs, in their opposing brief to the County's motion, seeks leave of court to file an amended
     complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, which requires leave of court to
27   amend once a responsive pleading has been filed. See Doc. # 13 at 23-24; Fed.R.Civ.P. 15(a)(2). However,
     no responsive pleading has yet been filed in this case and, therefore, plaintiffs may amend as a matter of
28   right. See Doe v. United States, 58 F.3d 494, 497 (1995)(motion to dismiss not responsive pleading within
     the meaning of Rule 15(a)); Fed.R.Civ.P. 15(a)(1). Therefore, this Court need not address plaintiffs' request.

1

    b.    The County's motion to dismiss plaintiffs' Section 1983 claim in

2

            plaintiffs' first cause of action is **GRANTED** as to the County's

3

            liability based on the actions of Bruce and **DENIED** insofar as it seeks

4

            dismissal based on the actions of other County employees;

5

    c.    The County's motion to dismiss plaintiffs' Section 1983 claims based

6

            on a negligent hiring theory in plaintiffs' second cause of action is

7

            **GRANTED**;

8

    d.    The County's motion to dismiss the state law claims in plaintiffs'

9

            third and fourth causes of action based on failure to state a claim

10

            under a danger-creation or special relationship theory is **DENIED**;

11

    e.    The County's motion to dismiss portions of plaintiffs' eighth and

12

            ninth causes of action based on failure to state a claim is **DENIED**;

13

            and

14

    f.    The County's motion for more definite statement as to plaintiffs'

15

            eighth and ninth causes of action is **DENIED**.

16

17 Dated:    June 3, 2008

18

19                         JOHN A. HOUSTON

                         United States District Judge

20

21

22

23

24

25

26

27

28

07cv2385